2004 ND 160

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Douglas HILGERS, Defendant and Appellant.**

**No. 20030169.**

Supreme Court of North Dakota.

Aug. 4, 2004.

Rehearing Denied Sept. 15, 2004.

Douglas Hilgers, pro se, Duluth, MN, defendant and appellant; submitted on brief.

Robert P. Bennett, Assistant Attorney General, Bismarck, N.D., for plaintiff and appellee; submitted on brief.

NEUMANN, Justice.

[¶ 1] Douglas Hilgers appeals from a criminal judgment and sentence for the offense of removing or detaining a child in violation of a custody decree, a class C

felony in violation of N.D.C.C. § 12.1–18–05. We affirm.

### I

[¶ 2] Douglas Hilgers and Brenda Hilgers divorced in 1998. They have four children, one of whom is a minor. The trial court awarded Brenda Hilgers custody of the minor child, and awarded Douglas Hilgers visitation. Brenda Hilgers currently lives in Bottineau, North Dakota, and Douglas Hilgers lives in Duluth, Minnesota.

[¶ 3] In June 2001, Douglas Hilgers removed his minor child from Bottineau, North Dakota, and moved the child to his home in Duluth, Minnesota. Hilgers made several unsuccessful attempts to change custody in Minnesota. On September 13, 2001, the trial court issued an order for the immediate return of the child, subject to contempt and other sanctions, including criminal charges, if Hilgers failed to comply. Hilgers did not comply with the court's order, and a warrant was issued for his arrest. The minor child was eventually returned to his mother in late September 2001. Hilgers was subsequently arrested. Counsel was appointed at Hilgers' initial appearance, but that appointment was later withdrawn when the trial court found Hilgers was not indigent. A trial was held and the jury found Hilgers guilty of removing his minor child from the state in violation of the custody decree. Hilgers appeals, raising approximately thirty-one issues relating to his conviction. Among his numerous issues, Hilgers argues (1) the trial court erred in finding him ineligible for court-appointed counsel based on its finding he was not indigent; (2) the trial court erred in denying his request for a continuance; (3) the trial court erred in failing to issue all requested subpoenas; (4) the trial court erred in failing to issue his requested jury instructions; and (5) the trial court abused its discretion in the admission of testimony and evidence at trial.

### II

### A

[¶ 4] Hilgers argues the trial court erroneously determined he was not indigent, and therefore, did not qualify for court-appointed counsel at public expense. Hilgers argues he should have been granted counsel both during the trial and appellate stages of this case. We review a trial court's denial of appointment of counsel under an abuse of discretion standard. *State v. DuPaul*, 527 N.W.2d 238, 240 (N.D.1995).

> An abuse of discretion by the trial court is never assumed, and the burden is on the party seeking relief to affirmatively establish it. A trial court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. The party seeking relief must show more than that the trial court made a "poor" decision, but that it positively abused the discretion it has under the rule.

*Flattum–Riemers v. Flattum–Riemers*, 2003 ND 70, ¶ 7, 660 N.W.2d 558 (citations omitted).

[¶ 5] "The Sixth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, and Article I, § 12 of the North Dakota Constitution guarantee a criminal defendant effective assistance of counsel." *Garcia v. State*, 2004 ND 81, ¶ 5, 678 N.W.2d 568.

[¶ 6] North Dakota Rules of Criminal Procedure sets forth the right to appointed counsel:

Absent a knowing and intelligent waiver, every indigent defendant is entitled to have counsel appointed at public expense to represent the defendant at every stage of the proceedings from initial appearance ... through appeal in the courts of this state in all felony cases. N.D.R.Crim.P. 44(a); *DuPaul*, 527 N.W.2d at 241.

[¶ 7] "There is no legal reason to appoint counsel for someone who can afford and obtain his own." *DuPaul*, 527 N.W.2d at 241. Before counsel will be appointed, a defendant has the burden of establishing he is indigent and qualifies for appointment of counsel. *State v. Schneeweiss*, 2001 ND 120, ¶ 10, 630 N.W.2d 482.

[¶ 8] On December 5, 2002, the trial court removed Hilgers' appointed counsel, finding Hilgers was not indigent "[b]ased on an income of $31,000 gross per year and [Hilgers'] claim that he transferred real estate to his children without consideration."

Hilgers contends the trial court erred in finding he had assets, in the form of real property in Wisconsin, that disqualified him from appointment of counsel. However, the trial court does not appear to have adjudicated Hilgers as indigent because he owns the property, as argued by Hilgers on appeal. Based on the record, it appears the trial court found Hilgers ineligible for counsel because he transferred the real property without receiving consideration, not because he owned or had an interest in the property. Clearly, Hilgers' own statements show that, at one time, he did own the property. Under our guidelines, the trial court, when determining indigency, should consider: "[a]ny indication of anticipatory transfer of assets by defendant to create the conditions for eligibility for defense services should be scrutinized and dealt with decisively." N.D. Legal Counsel for Indigent's Comm'n, N.D.

Sup.Ct., Indigent Defense Procedures and Guidelines, Aug. 2002, at 1.2.

[¶ 9] Additionally, in his application for court-appointed counsel, Hilgers noted he earned approximately $31,000 per year. An individual with no dependents is eligible for indigent defense services if the annual gross income is at or below $11,075. N.D. Legal Counsel for Indigent's Comm'n, N.D. Sup.Ct., Indigent Defense Procedures and Guidelines, Aug. 2002, at 1.4. While Hilgers makes reference to his fiancee and several of his children as possible dependants in his application, Hilgers would only be eligible for services, under the guidelines, if there were at least seven persons in his household, based on his listed income of $31,000. Under the guidelines, a person with a household of seven persons is eligible if his annual gross income is at or below $34,175, while a person with a household of six persons is eligible for services if his annual gross income is at or below $30,325. At most, six persons reside in Hilgers' household. Therefore, he would not qualify under the suggested annual gross income of the guidelines.

[¶ 10] In Hilgers' Addendum to Application for Appointed Defense Services, dated December 5, 2002, he stated,

I own no real estate.... Mrs. Hilgers, herself, requested that the Wisconsin home be given over to the four children; ... I concluded as well, that it was appropriate.... I regularly seek the children's input on their interests and intentions. Attempting, with the children's knowledge, to rent the property to put toward the tax debt....

We have reviewed the information before the trial court, specifically, Hilgers' own claim that he transferred the property to his children, Hilgers' allusion to the fact that he retained control over the property, documents showing tax payments, listed

income, and other information contained in Hilgers' application. Because Hilgers did not meet his burden of proving indigency, we conclude the trial court did not abuse its discretion in determining Hilgers did not qualify for appointment of counsel during both the trial and appellate proceedings.

### B

[¶ 11] Hilgers also raises several issues with regard to the indigency guidelines used by trial courts within this state. According to Hilgers, the criteria for establishing indigency are unpublished, available only to judges and counsel and, therefore, unavailable to him. He claims he is therefore unable to rebut the criteria set forth in the guidelines. Hilgers also questions, on appeal, "is this issue of 'assets' the only criteria required to be evaluated in considering the assignment of appointed counsel, public or otherwise?"

[¶ 12] There is nothing in the record to indicate Hilgers requested access to the indigency guidelines. In addition, we fail to see how knowledge of the guidelines would have assisted Hilgers in meeting his burden of proving indigency. Hilgers presented all of his issues related to health, travel, occupation, and a number of other factors he believed create exceptional circumstances in his case to the trial court. Despite this information, the trial court still found Hilgers ineligible to receive indigent defense services.

[¶ 13] With regard to Hilgers' final issue regarding the criteria to be considered, the guidelines provide consideration should be given to, "(1) income resources; (2) non-income resources; (3) any extraordinary financial conditions that would prevent the defendant from hiring an attorney; and (4) estimated cost of defense services." Legal Counsel for Indigent's Comm'n, N.D. Sup.Ct., Indigent Defense

Procedures and Guidelines, Aug. 2002, at 1.3. Additionally, the guidelines also provide a list of "Exceptional Factors," to be taken into consideration, stating that, "[a] defendant whose income resources or non-income resources exceed these guidelines may still be eligible to receive legal assistance." Guidelines, 1.7. These factors include, "age or physical infirmity of household members." *Id.*

### C

[¶ 14] Hilgers argues his appointed counsel, later removed after the trial court determined Hilgers was not indigent, was "negligent/incompetent." Specifically, Hilgers argues his counsel failed to petition for review of the trial court's order removing him as counsel. Hilgers also argues appointed counsel was negligent, "having petitioned for: recusal and preserving his right to reassignment (one petition) well knowing that, upon review of the file, that Orders had already been issued." We will treat Hilgers' issue as a claim of ineffective assistance of counsel.

[¶ 15] On appeal, we review the entire record when a claim of ineffective assistance of counsel is raised. *State v. Lefthand,* 523 N.W.2d 63, 69 (N.D.1994). "If we cannot readily determine that assistance of counsel was plainly defective and there exist no other grounds for reversal, then the defendant can later pursue his claim at a post-conviction proceeding where an adequate record can be developed." *Id.*

[¶ 16] To establish ineffective assistance of counsel, a petitioner must prove that his counsel's performance was so deficient as to fall below an objective standard of reasonableness and that counsel's deficient performance was prejudicial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Garcia,* 2004 ND 81, ¶ 5, 678 N.W.2d 568.

Generally, the second, or prejudice, prong of the *Strickland* test can only be met if the defendant "establish[es] a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different." *Syvertson v. State,* 2000 ND 185, ¶ 22, 620 N.W.2d 362.

[¶ 17] Hilgers has not demonstrated the "probable different result" that would have occurred, had his counsel petitioned for review of the trial court's order. *See Lefthand,* 523 N.W.2d at 70. Therefore, he has failed to demonstrate prejudice. After reviewing the entire record available to us, we cannot determine counsel's performance was plainly defective.

## III

[¶ 18] Hilgers has raised several evidentiary issues on appeal. Hilgers asserts the trial court erred in preventing him from offering impeachment evidence against Brenda Hilgers during trial. Additionally, Hilgers argues the trial court erred, causing Hilgers undue prejudice, by barring a witness from testifying; erred in refusing to issue subpoenas and allow out-of-state testimony; improperly referred, during his sentencing hearing, to sealed files and an incident involving his alleged locking of the family freezer; and improperly interrupted him during his arguments at his sentencing hearing.

## A

[¶ 19] Under Rule 10(b), North Dakota Rules of Appellate Procedure, an appellant is required to file a trial transcript with the Court on appeal. *Christianson v. Christianson,* 2003 ND 186, ¶ 13, 671 N.W.2d 801. If the appellant fails to comply, he assumes the risks and consequences of such failure. *Flattum–Riemers,* 2003 ND 70, ¶ 8, 660 N.W.2d 558. A pro se litigant is not granted leniency solely because of his sta-

tus as such. *Id.* We have repeatedly held, "we will decline to review an issue if the record on appeal does not allow a meaningful and intelligent review of the trial court's alleged error." *Id.*

[¶ 20] Hilgers has not filed a transcript. Because we have not been provided a transcript, we are unable to provide meaningful review of Hilgers' issues related to the attempted impeachment of his ex-wife's testimony, the trial court's references to sealed files and the freezer incident during sentencing, and the trial court's interruption of Hilgers' statements during sentencing. Only a review of the transcript would allow us to fully consider each of these alleged errors. Therefore, we conclude the above-listed issues are without merit.

[¶ 21] We must address Hilgers' arguments related to the trial court's denial of a witness from testifying and refusal of out-of-state testimony. In his brief, Hilgers fails to state the identify of the witness, nor does he offer the nature of the out-of-state testimony. Therefore, we are unsure as to whether this issue was raised in the record before us, or solely during the course of the trial, for which we do not have a transcript. We will assume, however, that Hilgers is referring to the trial court's refusal to allow a Minnesota social worker and Hilgers' fiancee, residing in Minnesota, to testify by telephone.

[¶ 22] We have recently addressed the issue of telephonic testimony in a criminal trial:

> Under Rule 26, North Dakota Rules of Criminal Procedure, "in all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by statute or these rules." North Dakota case law does not address whether telephonic testimony may be admitted in a criminal trial. The civil

rule equivalent, Rule 43, N.D.R.Civ.P., requires testimony be taken orally in open court, but allows for deviation from this requirement under certain circumstances if all parties agree.

Because there is no precedent for such a practice in criminal trials and such testimony appears to possibly violate Rule 26, N.D.R.Crim.P., the trial court did not act arbitrarily, unreasonably, or capriciously in denying [the defendant's] request to allow [his witness] to testify by telephone. Additionally, even if the extended provisions of the civil rule were deemed applicable in this case, there was no agreement between the parties because the State objected. Therefore, the trial court properly refused to allow [the witness] to testify by telephone.

*State v. Lemons*, 2004 ND 44, ¶¶ 10–11, 675 N.W.2d 148. We have held that a "trial court has broad discretion in determining evidentiary matters." *Id.* at ¶ 12.

[¶ 23] In this case, after reviewing the record available to us, the trial court did not abuse its discretion in refusing to allow Hilgers' witnesses to testify by telephone.

### B

[¶ 24] Hilgers argues the trial court erred in denying several of his requested subpoenas to procure witnesses in his favor. According to Hilgers, "did the trial court error [sic] in canceling his subpoenas and not allowing them because the defendant had no funds for witness fees and other costs?"

[¶ 25] Under the Sixth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment, a criminal defendant "shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." However, we have stated that this is not an absolute right and "the defendant must show the testimony would have been both favorable and material to his defense." *State v. Treis*, 1999 ND 136, ¶ 11, 597 N.W.2d 664. "Whether the district court's refusal to issue a subpoena violates the Sixth Amendment is a question of law, and our standard of review for a claimed violation of a constitutional right is *de novo*." *Id.*

[¶ 26] The procedure for issuing subpoenas is set forth in Rule 17, North Dakota Rules of Criminal Procedure. Under Rule 17(b), N.D.R.Crim.P.:

Defendants Unable to Pay. The court shall order at any time that a subpoena be issued for service on a named witness upon an ex parte application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. If the court orders a subpoena to be issued, the costs incurred by the process and the fees of the witness so subpoenaed must be paid in the same manner in which similar costs and fees are paid in the case of a witness subpoenaed in behalf of the prosecution.

[¶ 27] On February 21, 2003, the trial court informed Hilgers that he "may petition the court ex-parte for subpoenas of certain parties as witnesses at trial. The Court will sign the subpoenas if you can show the Court that the witnesses will have relevant testimony to give in your defense. . . . You will also have to request that because of financial hardship the witness fees and service fees be paid by the State." The trial court also enclosed a copy of Rule 17 of the North Dakota Rules of Criminal Procedure and a sample subpoena to assist Hilgers in his efforts.

[¶ 28] On March 5, 2003, the trial court ordered the Clerk of Court to issue sub-

poenas to the following persons, as Hilgers' requested: Robyn Englestad; Cyndi McIntee, Bottineau County Social Services; Mary Rothman, Bottineau County Social Services; Bottineau County Sheriff Steve Watson; Bottineau County Deputy Sheriff Sean Murphy. In this order, the trial court stated that, although Hilgers remained responsible for the expenses associated with the service and execution of a subpoena, it would "insure that the witnesses named be paid said expenses. The witnesses are to be give [sic] expense vouchers upon their appearance in court and said expenses will be paid by the Court." We also note Cyndi McIntee raised an objection to the subpoena prior to trial, but the trial court still ordered her to appear, stating again that it would provide her with any expenses and witness fees.

[¶ 29] In another order, dated March 5, 2003, the trial court denied four subpoenas, stating the subpoenas were not in compliance with Rule 17, N.D.R.Crim.P. The persons not required to appear under subpoena were: attorney Michael McIntee, Bottineau County State's Attorney Swain Benson, District Court Judge Gerald Rustad, and Rolette County State's Attorney Mary O'Donnell.

[¶ 30] It does not appear to us, based on the record, that the subpoenas were denied because Hilgers was unable to afford witness fees and costs. Although Hilgers correctly states the trial court denied several of his requested subpoenas, the trial court did issue several of the other requested subpoenas. On at least two occasions, the trial court stated it would ensure that all witness fees were paid. The trial court advised Hilgers he would need to comply with the requirements of Rule 17, N.D.R.Crim.P, before a subpoena would be issued. When the trial court determined Hilgers had failed to meet this requirement, it denied several subpoenas.

[¶ 31] In *State v. Treis*, we held the trial court took reasonable steps to ensure the defendant was afforded due process, even though the court would not issue subpoenas that failed to satisfy N.D.R.Crim.P. 17. *Treis*, 1999 ND 136, ¶ 12, 597 N.W.2d 664 In *Treis*, the trial court also required that, before it would allow the defendant to issue a subpoena, "the defendant would have to present to this court in an in camera proceeding the factual basis that would make the testimony of particular witnesses relevant before it would cause the State of North Dakota to be burdened with witness fees and costs." *Id.*

[¶ 32] We come to the same conclusion today. Hilgers was afforded due process, despite the trial court's refusal to issue several of his requested subpoenas. A trial court is not obligated to issue every subpoena requested by a defendant. The record before us does not provide an adequate basis showing the testimony would have been both favorable and material to Hilgers' defense. We cannot conclude Hilgers' Sixth Amendment right to compulsory process was violated. Therefore, we affirm the trial court's denial of Hilgers' requested subpoenas.

### IV

[¶ 33] Hilgers asserts several grounds for error regarding jury instructions. Specifically, Hilgers argues the trial court refused each of his requested jury instructions, and further failed to provide a basis for such refusal. According to Hilgers, the trial court erred in failing to provide several instructions, including instructions for: (1) legislative intent, (2) required intent, (3) his pro se effort, (4) a definition of "willful," and (5) the factual existence of the Uniform Child Custody Jurisdiction

Enforcement Act, as set forth in N.D.C.C. § 14–14.1–15. Hilger's issue on appeal states, "Where as the Trial Court permits reference to case law, in determining/answering questions re: Jury Instruction, i.e. age of the child, reference to legislative intent is denied to the defendant to answer questions? Did the Court err? [sic]" Hilgers asserted the trial court was obligated to issue an instruction so as not to "lead the jury to believe that the defendant exerted free choice in representing himself and influencing the Jury to believe the defendant of such demeanor or poor judgment to do so . . . . [sic]"

[¶ 34] Under Rule 30(c), N.D.R.Crim. P., "[t]he giving of instructions and the failure to instruct the jurors are deemed excepted to unless the court, before instructing the jurors, submits to counsel the written instructions it proposes to give to the jurors and asks for exceptions to be noted." Without a transcript, we are unable to determine whether the trial court complied with this rule, whether the trial court submitted its proposed jury instructions to the State and Hilgers, and whether the trial court afforded Hilgers an opportunity to note exceptions. We are therefore wholly unable to determine whether Hilgers raised and preserved the jury instruction issues.

[¶ 35] We reiterate that our rules require an appellant to file a trial transcript and the consequences of failing to do so fall on the appellant. N.D.R.Civ.P. 30(b); *Christianson,* 2003 ND 186, ¶ 13, 671 N.W.2d 801; *Flattum–Riemers,* 2003 ND 70, ¶ 8, 660 N.W.2d 558. "We will decline to review an issue if the record on appeal does not allow a meaningful and intelligent review of the trial court's alleged error." *Flattum–Riemers,* at ¶ 8.

## V

[¶ 36] In his brief, Hilgers seems to argue he was not afforded "review by a Jury of peers." In North Dakota, we have a statutory scheme setting forth the proper method of both summoning a jury panel and challenging a jury panel. *See* N.D.C.C. ch. 29–17. Under N.D.C.C. § 29–17–19, "[a] challenge to a panel can be founded only on a material departure from the forms prescribed by law in respect to the drawing and return of the jury, or on the intentional omission of the sheriff to summon one or more of the jurors drawn." Additionally, "[a] challenge to a jury panel must be taken before a juror is sworn and must be in writing specifying plainly and distinctly the facts constituting the ground of challenge." N.D.C.C. § 29–17–20. There is no transcript of the voir dire proceedings. Without a transcript, we cannot provide meaningful review of the trial court's alleged error. *Flattum–Riemers,* 2003 ND 70, ¶ 8, 660 N.W.2d 558. We do not know the composition of the jury pool, nor do we know whether anyone was excluded and, if so, a basis for such exclusion. We are unable to determine whether the jury selection proceedings were prejudicial to Hilgers.

## VI

[¶ 37] On appeal, Hilgers argues the trial court erred in denying his requests for a continuance. Hilgers moved for a continuance on March 4, 2003, and, after the trial court's denial on March 5, 2003, Hilgers moved for reconsideration on March 17, 2003, and again requested a continuance on March 21, 2003. According to Hilgers, he showed good cause for a continuance because he did not have adequate time to prepare, despite his clear demonstration of "diligence in his pro se efforts." Hilgers also argues the trial court erred because there was an "irra-

tional, unreasonable time constraint upon all process of the criminal accusation, far out of proportion to similar cases." We assume Hilgers is again referring to the trial court's denial of his motions for continuance.

[¶ 38] Under the North Dakota Rules of Court, motions for a continuance will be granted only if the movant shows good cause. N.D.R.Ct. 6.1(b). "We will not reverse a trial court's decision to deny a continuance absent an abuse of discretion." *Interest of R.O.*, 2002 ND 154, ¶ 10, 652 N.W.2d 327.

[¶ 39] In this case, the trial court denied Hilgers' request for a continuance because,

> [t]here exists no compelling reason to grant a continuance. The Court recognizes the difficult task before the defendant in representing himself. However, it is the Court's view that it is the defendant's refusal to use his resources to hire an attorney rather than indigency that places him in this predicament.

Based on the record before us, including the trial court's rationale for denying Hilgers' request, we conclude the trial court did not act arbitrarily, unreasonably, or unconscionably in denying Hilgers' requests for a continuance. We find no error in the trial court's decision.

[¶ 40] In a related matter, Hilgers also argues that, after the "suspicious disappearance" of a "cooperative" witness, the trial court refused to grant a continuance to secure the presence of this witness. We assume this request was made orally during trial because there is no evidence of this request in the record before us and Hilgers has not provided us with a transcript.

[¶ 41] Without a transcript, we are unable to provide a meaningful review of this issue. We do not know if, in fact, Hilgers

requested such a continuance, or even whether the witness, who is not identified by Hilgers on appeal, failed to appear. We cannot determine, based on the information before us, whether the trial court abused its discretion ·in failing to continue the proceedings.

[¶ 42] Hilgers also argues the trial court erred in failing to continue any of his challenges, despite Rule 12(b)(2), N.D.R.Crim.P., which states defects can be raised at "any time during the pendency of the proceedings." Hilgers misapplies this rule. This rule applies to "defects in the indictment, information, or complaint." Clearly, Hilgers' arguments do not relate to the sufficiency of the charging document. This argument is without merit.

## VII

[¶ 43] Hilgers has raised additional issues on appeal. We find these issues without merit.

## VIII

[¶ 44] The judgment of the trial court is affirmed.

[¶ 45] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.