2007 ND 164

**STATE of North Dakota, Plaintiff and Appellee**

**v.**

**Andrea BARENDT, Defendant and Appellant.**

**No. 20060370.**

Supreme Court of North Dakota.

Oct. 16, 2007.

Rehearing Denied Dec. 13, 2007.

Lonnie Olson (argued), State's Attorney, Devils Lake, ND, for plaintiff and appellee.

Ulysses S. Jones (argued), Jones Law Office, Devils Lake, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Andrea Barendt appeals from a criminal judgment following a bench trial for Misapplication of Entrusted Property, a class B felony. Andrea Barendt argues her conviction should be overturned because the State failed to prove every element of the offense beyond a reasonable doubt. Andrea Barendt further contends that, even if sufficient evidence existed to support her conviction, the conviction was against the weight of the evidence. We hold sufficient evidence existed to support

the verdict, and Andrea Barendt's challenge to the weight of the evidence was not properly preserved for appeal. Therefore, we affirm the criminal judgment.

I.

[¶ 2] On April 12, 2002, Ada Barendt executed a general durable power of attorney ("POA") naming her granddaughter, Andrea Barendt, as her attorney-in-fact. When Ada Barendt gave Andrea Barendt the POA, Ada Barendt was in her eighties and her health was declining. The POA contained a variety of enumerated powers, which allowed for the acquisition, sale, or transfer of Ada Barendt's property, the use of her financial accounts, and one provision provided that the attorney-in-fact had the authority

> [t]o embark upon any program of gifts to my children and their lawful descendants and to continue any program of gifts which I may have commenced and to make transfers in furtherance of any . . . pattern of gifts.

The instrument explicitly provided the powers were to be exercised by the attorney-in-fact "for [Ada Barendt's] benefit."

[¶ 3] In February 2004, Ada Barendt moved to Good Samaritan, a nursing home, in Devils Lake. At first, Ada Barendt's Good Samaritan bills and treatment were covered by Medicare because she required a specific type of therapy. After this treatment was no longer necessary, her Medicare coverage ceased. Ada Barendt continued to stay at Good Samaritan, and her personal responsibility for facility bills began. She also began to incur substantial bills for prescriptions at Thrifty White Drug pharmacy.

[¶ 4] Good Samaritan sent Andrea Barendt the bills for Ada Barendt's treatment and care, with the knowledge that Andrea Barendt was Ada Barendt's attorney-in-fact. For an extended period of time, Andrea Barendt failed to pay Ada Barendt's Good Samaritan bills. After several failed attempts to collect the balance due for Ada Barendt's care, Good Samaritan was able to contact Andrea Barendt in August 2004, and she paid $18,000 to Good Samaritan in September 2004. At this point, Ada Barendt's bill for her stay at Good Samaritan had reached approximately $79,000, leaving an unpaid balance of approximately $51,000. Thrifty White Drug also contacted Good Samaritan around this time, explaining Ada Barendt's unpaid prescription bills had reached approximately $4,000, and the pharmacy was concerned it may have to stop issuing Ada Barendt her prescriptions.

[¶ 5] Good Samaritan contacted the Ramsey County Public Administrator ("Public Administrator") to explain Ada Barendt's bills were accumulating and if they remained unpaid, Good Samaritan would have to remove Ada Barendt from the facility. The Public Administrator sought an emergency guardianship and conservatorship. Ada Barendt was placed under temporary guardianship and conservatorship in July 2005.

[¶ 6] After receiving guardianship and conservatorship, the Public Administrator conducted an accounting of Ada Barendt's funds. In the accounting, the Public Administrator discovered numerous transactions he believed had not been undertaken for the benefit of Ada Barendt. The Public Administrator turned over his accounting to the Devils Lake Police Department.

[¶ 7] Devils Lake Police Department contacted the police in Mattoon, Illinois, where Andrea Barendt resided during the time she served as Ada Barendt's attorney-in-fact. Lieutenant Taylor of the Mattoon Police interviewed Andrea Barendt regarding possible theft. According to the officer's testimony at trial, Andrea

Barendt admitted during the interview to misappropriation of Ada Barendt's funds, stating she spent money on the purchase of a pick-up truck, illegal drugs, and gambling. Lieutenant Taylor testified about the discovery of a cashier's check, drawn by Andrea Barendt against Ada Barendt's account in the amount of $50,000, made payable to Andrea Barendt. Andrea Barendt testified she placed these funds in a different account bearing only her name. Devils Lake Police Captain Nannette Martin testified about trial exhibit summaries compiled to demonstrate Andrea Barendt's ATM withdrawals from Ada Barendt's account from 2003 to 2005. She testified the ATM withdrawals exceeded $30,000 during this period. She testified thousands of dollars in checks were drawn against Ada Barendt's account, which Andrea Barendt had made payable to herself, cash, or other facilities to which she owed her personal debts.

[¶ 8] Andrea Barendt was charged with felony Misapplication of Entrusted Property under N.D.C.C. § 12.1–23–07. She was convicted after a bench trial in November 2006. She appeals the conviction.

## II.

### A. Sufficiency of the Evidence

[¶ 9] When reviewing challenges to the sufficiency of the evidence, this Court draws all inferences in favor of the verdict. *E.g., State v. Lusby,* 1998 ND 19, ¶ 5, 574 N.W.2d 805. " 'This [C]ourt will reverse a criminal conviction only if, after viewing the evidence and all reasonable evidentiary inferences in the light most favorable to the verdict, no rational factfinder could have found the defendant guilty beyond a reasonable doubt.' " *Id.* (quoting *State v. Olson,* 552 N.W.2d 362, 364 (N.D.1996)).

[¶ 10] Andrea Barendt was charged with Misapplication of Entrusted Property under N.D.C.C. § 12.1–23–07; the charge contains seven elements. *State v. Jelliff,* 251 N.W.2d 1, 3, 7 (N.D.1977) (citing N.D.C.C. § 12.1–23–07 and providing this charge requires the State to prove (1) the disposal, use, or transfer; (2) of any interest in property; (3) which has been entrusted to defendant; (4) as a fiduciary; (5) in a manner he knows is not authorized; (6) and that he knows to involve a risk of loss or detriment to; (7) the owner of the property). Andrea Barendt challenges the sufficiency of evidence with regard to two of the elements. She contends there was insufficient evidence to prove she had knowledge her purchases and account withdrawals were not authorized at the time they were made. She also argues the evidence is insufficient to show she knew such purchases and account withdrawals involved a risk of loss or detriment to Ada Barendt's property.

[¶ 11] Andrea Barendt contends the account withdrawals and the purchases were authorized because the general durable POA contained a "laundry list" of powers, which authorized her to do anything Ada Barendt could do. She further argues that if her acts were not actually authorized by the powers conferred to her in the POA, the State failed to provide sufficient evidence for a reasonable factfinder to infer she had knowledge that she acted in an unauthorized manner, therefore defeating the knowledge requirement of the unauthorized act element.

[¶ 12] A power of attorney is a written legal instrument authorizing another to act as one's agent; the agent holding the power of attorney is the attorney-in-fact. *Estate of Littlejohn,* 2005 ND 113, ¶ 7, 698 N.W.2d 923 (citing *Estate of Mehus,* 278 N.W.2d 625, 629 (N.D.1979)). "Because a power of attorney creates an

agency relationship, agency principles are applicable in determining the authority and duties of the attorney in fact." *Id.* An agency relationship involves both a contractual and a fiduciary relationship, and the interpretation of an attorney-in-fact's authority is controlled by the rules for construing contracts, unless the fiduciary relationship requires the application of a different rule. *Id.* (citing *Burlington N. & Sante Fe Ry. Co. v. Burlington Res. Oil & Gas Co.,* 1999 ND 39, ¶ 15, 590 N.W.2d 433). "The clear and explicit language of a contract governs its interpretation and words are construed in their ordinary sense." *Id.*

[¶ 13]   Ada Barendt's POA provided in paragraph one:

> I, ADA R. BARENDT … do hereby appoint my granddaughter, Andrea Barendt … as my attorney-in-fact and agent, in my name and *for my benefit.* I intend to create a Durable Power of Attorney pursuant to Chapter 30.1–30 of the North Dakota Century Code.

(Emphasis added).   The clear and explicit language of the POA requires that acts by the agent be done for the benefit of Ada Barendt.   The POA authorized Andrea Barendt to make account withdrawals, transfer funds between accounts, and even to purchase property using Ada Barendt's funds, but such acts were authorized only to the extent to which they were done for the benefit of Ada Barendt.

[¶ 14]   Andrea Barendt admitted during her testimony at trial she gambled with some of the money she withdrew from her grandmother's account.   Andrea Barendt testified she purchased a pick-up truck with her grandmother's money and that she, and not her grandmother, enjoyed the benefits of using the vehicle.   Lieutenant Taylor testified Andrea Barendt admitted to using a considerable amount of Ada Barendt's money on various types of illegal drugs.   The statements regarding drug purchases were also recorded in the police report admitted into evidence, although Andrea Barendt denied having made such statements.   Andrea Barendt testified she used Ada Barendt's funds to pay her own personal debts.   Evidence presented at trial demonstrated that at the time Andrea Barendt was paying her own debts, Ada Barendt's debts were going unpaid.   Andrea Barendt also withdrew $50,000 in the form of a cashier's check and deposited the check into an account bearing only her name.   She testified she took the money to fund her own start-up eBay internet business.   Based upon the evidence presented at trial, a factfinder could reasonably infer Andrea Barendt knew the withdrawal and expenditure of Ada Barendt's funds was unauthorized when she withdrew and spent the funds because one could infer she knew these acts were not undertaken to benefit Ada Barendt.

[¶ 15]   Section 12.1–23–07, N.D.C.C., requires the defendant know of the risk of loss or detriment to property.   The money withdrawn for gambling was subject to a risk of loss by the very nature of the use of the money.   Purchasing illegal drugs with Ada Barendt's funds caused detriment to the total balance.   Andrea Barendt's other withdrawals and checks for payment of her personal bills detrimentally affected Ada Barendt's account funds.   A reasonable factfinder could also infer that withdrawing a $50,000 cashier's check to start her own eBay store put Ada Barendt's funds at risk.   For all of these reasons, there was sufficient evidence to infer Andrea Barendt knew of risk of loss or detriment to Ada Barendt's property at the times she withdrew and spent Ada Barendt's funds.

[¶ 16]   Andrea Barendt contends the POA clearly and explicitly provided for her withdrawals and expenditures in para-

graph A(13), which allows the attorney-in-fact:

[t]o embark upon any program of gifts to [Ada Barendt's] children and their lawful descendants and to continue any program of gifts which [she] may have commenced and to make transfers in furtherance of any estate plan or pattern of gifts.

[¶ 17]   Based on this provision, Andrea Barendt argues her actions were expressly authorized because she testified her grandmother had created a pattern of gifting money, paying personal bills, and providing vehicles for Andrea Barendt and Andrea Barendt's father before the POA was in place.   Thus, she argues her transactions amounted only to the continuance or furtherance of a gifting program her grandmother created before the POA was in place.   She argues the State did not directly refute her testimony with regard to Ada Barendt's alleged practice of gifting, and therefore there was insufficient evidence to prove she knew the withdrawal and expenditure of Ada Barendt's funds was unauthorized.   While Andrea Barendt couches the challenge in terms of evidentiary sufficiency, it is actually a challenge to the credibility of the evidence.

[¶ 18]   The judge in a bench trial is the factfinder, and the judge makes determinations of credibility.   *See, e.g., State v. Cox*, 325 N.W.2d 181, 183 (N.D. 1982) ("The trial court, as the fact-finder in [a bench trial] . . . [is] the ultimate judge of the credibility of witnesses.").   Because the factfinder may make determinations

regarding the credibility of witnesses, the judge is not required to believe a witness's testimony, even when no direct evidence is offered to the contrary.   *See id.*   With the exception of Andrea Barendt's testimony, there was no other evidence supporting a pattern of gifts.   A reasonable judge or factfinder could have simply determined Andrea Barendt's testimony lacked credibility and thus inferred no pattern of gifting existed, making her actions unauthorized.[1]

### B.   Weight of the Evidence

[¶ 19]   Andrea Barendt next contends her conviction should be overturned because, even if the evidence is sufficient to support a conviction, the weight the district court judge assigned the evidence was improper.

[¶ 20]   Andrea   Barendt   cites *State v. Yineman*, 2002 ND 145, ¶¶ 9, 10, 651 N.W.2d 648, for the proposition that this Court "must evaluate for itself the credibility of the evidence" and "acts as a 'thirteenth juror' and independently assigns value to and weighs evidence."   Appellant misreads the holding in *Yineman*, which applies this standard not to appellate courts, but instead to trial court judges when moved to grant a new trial or set aside a jury verdict:

If the [trial] court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it

---

1.   Further, although the inference that the factfinder determined such evidence lacked credibility would follow from the finding of guilty, the judge in this bench trial made an unusual finding, relating directly to Andrea Barendt's credibility on this issue:

It was raised as a defense that the funds that were given to Andrea Barendt were gifts from Ada Barendt, and I do want to make a specific finding that the transactions do not reflect gifts . . . as it was Andrea Barendt converting cash to herself or others for the benefit of herself.   That's my finding of fact.

. . . .

[H]er testimony with regard to gifts I do not find believable.

may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

*Yineman*, at ¶ 9 (quoting *U.S. v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir.1980)) (alteration in original). The independent determination of credibility applies to trial court judges who have the opportunity to preside over the presentation of evidence and observe witnesses as they testify. *State v. Oasheim*, 353 N.W.2d 291, 293 (N.D.1984) ("[T]he *trial judge* may, within limits, weigh the evidence and evaluate for himself the credibility of the witnesses.") (emphasis added).

[¶ 21] This Court does not sit as a "thirteenth juror" to make independent determinations of credibility of witnesses or other evidentiary weight. "[A]t the appellate level we do not substitute our judgment for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction." *State v. Bergeron*, 326 N.W.2d 684, 687 (N.D.1982) (quoting *State v. Olmstead*, 246 N.W.2d 888, 890 (N.D.1976)). "Reading a cold transcript is not 'a substitute for hearing and observing witnesses testify.'" *Bergeron*, 326 N.W.2d at 687 (quoting *Olmstead*, 246 N.W.2d at 890). This Court cannot "second-guess the trial court's assessment of the credibility and weight of the evidence." *State v. Hafner*, 499 N.W.2d 596, 597 (N.D.1993).

[¶ 22] Due to this inability to directly assess the credibility of evidence, this Court only reviews determinations of credibility by engaging in a review of motions for new trial or motions to set aside a jury verdict, which have been denied or granted by a trial court and subsequently appealed. *See, e.g., State v. Lusby*, 1998 ND 19, ¶ 7, 574 N.W.2d 805. In doing so, this Court does not act as a "thirteenth juror" to weigh the evidence, but applies an abuse of discretion standard in deter-

mining whether the trial court properly decided a motion for new trial or to set aside a jury verdict. *See id.* (reviewing the denial of a motion for new trial and applying an abuse of discretion standard, but not independently assessing the credibility of evidence presented at trial); *State v. Oasheim*, 353 N.W.2d at 293 ("A trial court may, however, grant a new trial if it determines that the verdict, although supported by legally sufficient evidence, is against the great weight of the evidence.... A motion for new trial on the ground that the verdict is against the weight of the evidence is a matter resting within the sound discretion of the trial court ... [and] will not be set aside unless an abuse of discretion is shown."). In a bench trial, absent an appeal from a trial court's decision regarding a motion for new trial, this Court may not attempt to review any decisions related to the weight of the evidence. *Bergeron*, 326 N.W.2d at 687 (even where conflicting evidence exists, if one of the inferences to be drawn reasonably points to guilt, the appellate court will not substitute its judgment, based only upon "reading a cold transcript," for the credibility determinations made by a jury or judge in a bench trial). At the end of the trial, Andrea Barendt did not make a motion for new trial. Thus, this Court has no ability to review any motions or issues challenging the weight and credibility of the evidence and the issue has not been properly preserved for appeal.

[¶ 23] Therefore, we affirm the criminal judgment.

[¶ 24] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.