2008 ND 108

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Edward Dana CURTIS, Defendant and Appellant.**

No. 20070250.

Supreme Court of North Dakota.

June 5, 2008.

Gary Lee Delorme, Assistant State's Attorney, Fargo, N.D., for plaintiff and appellee.

Daniel James Borgen, Grand Forks Public Defender Office, Grand Forks, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Edward Curtis appealed from a judgment of conviction entered upon a jury verdict finding him guilty of theft of property. We affirm, concluding: (1) Curtis's constitutional right to compel attendance of witnesses was not violated; (2) Curtis's prosecution was not precluded by the civil dispute doctrine; and (3) the evidence was sufficient to support the conviction.

I

[¶ 2] On October 14, 2005, Curtis opened an account at Northland Educators Federal Credit Union, depositing a $55,540 check drawn on a Canadian bank. After converting the funds under the prevailing exchange rate to $45,341 in United States dollars, the credit union applied a tentative deposit to Curtis's account. The credit union then forwarded the check as a foreign collection item for processing.

[¶ 3] Over the next two weeks, Curtis called the credit union several times asking whether the check had cleared and whether the funds were available for withdrawal. On October 27, 2005, the credit union received notification that the check had cleared, and a teller at the credit union called Curtis and informed him the funds were available. Curtis went to the credit union that same day and purchased

$10,000 in cashiers checks and $29,600 in money orders with funds from his account.

[¶ 4] On the next day, October 28, 2005, the credit union was informed by an intermediary bank that the Canadian check had not cleared. The credit union's manager called Curtis to advise him that the check had not cleared and the credit union would be withdrawing funds from his account. According to the manager's testimony, Curtis responded:

> Holy shit, I've already spent some of that money. I've given some of those checks out and I've given some of those money orders out.

The manager testified she told Curtis to return the checks or money orders still in his possession to the credit union. Curtis testified that he had already mailed out all of the checks and money orders when the credit union advised him the check was no good.

[¶ 5] Curtis did not return any of the checks or money orders, and did not respond to the credit union's attempts to contact him by phone and by certified mail. The credit union obtained copies of the money orders after they were presented for payment. At trial, the State introduced as exhibits copies of fifteen of the money orders Curtis had received from the credit union, each in the amount of $800. Fourteen of the money orders bore dates after October 28, 2005, the day Curtis was notified the Canadian check had not cleared and was told to return any checks or money orders still in his possession. The fifteenth money order was not dated, but had cleared on November 7, 2005.

[¶ 6] While investigating the case, police learned that Curtis had been posting comments about the matter on an internet website. In a posting dated November 8, 2005, Curtis had written:

> Subject: RE [phproductstaxrevolt] shut em down!
>
> There is just mountains of junk to learn to be free, that means you just ain't free having to learn it all? Are you or anyone out there good with bank law? I got a good one going and it plays beautiful [sic] in my game plan! I have 5 grand for the best, most humorous legal brief on my bank discrepancy;—] the briefs will mainly be used to advertise and poke them all with! I set up a pretty good game, It is still me VS them, I can pick em and I love poken but the nitty gritty that keeps me out of jail I never have time for? if you want to read the papers served me, get back to me, want make this a winner!

[¶ 7] Curtis was charged with theft of property in violation of N.D.C.C. §§ 12.1–23–02(1) and 12.1–23–05(1), and with forgery in violation of N.D.C.C. § 12.1–24–01. The forgery charge was dismissed before trial. The theft of property charge was tried to a jury, with Curtis representing himself and attorney Steven Mottinger serving as standby counsel. The jury returned a verdict of guilty, and judgment of conviction was entered.

II

[¶ 8] Curtis contends his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and under N.D. Const. art. I, ¶ 13, were violated when he did not receive adequate assistance to subpoena witnesses necessary for his defense. He alleges that either Mottinger, as his standby counsel, or the court should have ensured that all of the witnesses Curtis wished to call to testify were subpoenaed.

[¶ 9] The issue of which witnesses to call for Curtis's defense was a matter of contention throughout the proceedings. Curtis wished to present a defense based

upon his views that the banking system and judicial system were illegal and corrupt, and were persecuting him. Curtis sought to subpoena five witnesses, including agents of the FBI, Homeland Security, and the United States Marshal's office, to assist in this defense.

[¶ 10] Curtis had initially sought court-appointed counsel, and Mottinger was appointed to represent him. At a June 7, 2007, pretrial conference, Mottinger advised the court that he and Curtis disagreed over the nature of the defense to present, and specifically disagreed about which witnesses to call. Mottinger explained that Curtis wished to subpoena several witnesses who Mottinger believed had "nothing relevant to testify to." Curtis indicated that he wanted to represent himself, and agreed to allow Mottinger to serve as standby counsel. In agreeing to serve as standby counsel, Mottinger clearly expressed that he would not issue subpoenas to witnesses who had no relevant testimony to offer:

> MR. MOTTINGER: Your Honor, I am more than willing to be available to answer questions, any questions, Mr. Curtis may have or to offer suggestions to him. I am a little bit disinclined to sit at counsel table with him. I believe that as an Officer of this Court, it is incumbent upon me to make decisions in terms of whether or not witnesses Mr. Curtis suggests to subpoena are appropriate or not—
>
> DEFENDANT: They are.
>
> MR. MOTTINGER:—I don't want to get put in a position of having to issue those subpoenas. If Mr. Curtis wants to represent himself, that is fine. If the

Court deems it appropriate for me [to] stand by, not at counsel table, to offer assistance and suggestions to Mr. Curtis, I am more than willing to do that as a courtesy to the Court and as a courtesy to the system.

The court indicated Mottinger would serve as standby counsel.[1]

[¶ 11] During the trial, Curtis indicated to the court that he had attempted, through the clerk of court and Mottinger, to subpoena agents of the FBI, Homeland Security, BCI, and the United States Marshal's office. Mottinger explained to the court that he had advised Curtis that he believed those witnesses had no relevant testimony and would not be permitted to testify, and he would not subpoena them. Curtis asserts on appeal that Mottinger and the court should have assisted him in procuring the attendance of these witnesses.

 [¶ 12] Curtis's argument is premised upon his constitutional right to compel the attendance of witnesses in his favor. *See* U.S. Const. Amend. VI ("the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor"). A criminal defendant's Sixth Amendment right is not absolute, and does not guarantee the right to secure the attendance and testimony of any and all witnesses. *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982); *State v. Hilgers*, 2004 ND 160, ¶ 25, 685 N.W.2d 109; *State v. Stockert*, 2004 ND 146, ¶ 12, 684 N.W.2d 605; *State v. Treis*, 1999 ND 136, ¶ 11, 597 N.W.2d 664. The trial court "is not obligated to issue every subpoena requested by a defendant." *Hilgers*, at

---

1. Mottinger was designated as standby counsel, but at trial, with the permission of Curtis and the district court, he served as hybrid counsel, essentially acting as co-counsel. *See Johnson v. State*, 2004 ND 130, ¶ 20, 681 N.W.2d 769; *State v. Ochoa*, 2004 ND 43, ¶ 4, 675 N.W.2d 161. Although Curtis handled most of his own defense, Mottinger was allowed to make objections, argue motions, and present part of the closing argument.

¶ 32. The defendant has the burden of showing that the testimony would have been both favorable and material to his defense. *Valenzuela–Bernal,* at 867, 102 S.Ct. 3440; *Hilgers,* at ¶ 25; *Stockert,* at ¶ 12; *Treis,* at ¶ 11. "Whether the district court's refusal to issue a subpoena violates the Sixth Amendment is a question of law, and our standard of review for a claimed violation of a constitutional right is *de novo.*" *Hilgers,* at ¶ 25 (quoting *Treis,* at ¶ 11); *see also Stockert,* at ¶ 12.

[¶ 13] The record is devoid of any showing by Curtis that these witnesses would have provided favorable and material testimony to aid his defense to the theft charge. Rather, the record demonstrates Curtis intended to use these witnesses to present to the jury his beliefs that the banking system and judicial system were illegal and corrupt, and were intentionally persecuting him. At the pretrial conference, Curtis attempted to explain why he wanted these witnesses present:

I am not guilty of nothing and I am standing. I am not budging. I am willing to defend myself and all I want is an impartial jury that I can present my case to. And, I do want some like Homeland Security, FBI—they have all interviewed me, they've all known me. I mean, I want FBI present at the trial because I got charges I want to file on this man because he has stolen my life. This is the Bill of Rights. Every single one has been broke. I haven't done nothing wrong. I mean, I've got a little bit on the writing but, I mean, I am not a professional writer. I have never threatened anyone and that was never my intent. Homeland Security, FBI, BCI, every single agency has been over to my house. I have talked to them and I care about my daughter's future. You people don't. I mean, I am looking out after her future. I see what is going on. I mean, Saddam Hussein never thought

they were doing any crimes neither when they were like butchering people. Germany never thought they were doing any crimes when Nazi's were in charge. I mean, our justice system is nuts and I am willing to prove it. We haven't had a money system since 1933. I've researched this, I know. I mean I put up a website. I challenged any judge, any lawyer in the state to read my website and prove me guilty of anything. I know I did no crime. This is a pony show.

The court then attempted to explain to Curtis that the trial would be limited to issues relevant to the theft charge:

THE COURT: The second point I want to make is that you need to understand that it is not going to be a free for all with you able to present whatever you want to present—

DEFENDANT: I have—that whole pile there—

THE COURT:—a Judge and all of us who work in this system are required to keep the trial focused on the issues and the issues have only to do with the allegations in those complaints and they nothing to do with what the FBI thinks or what other agencies that you are talking about may think—

DEFENDANT: I want them there for my protection from the justice system. You are all paid by the State, I am not.

The issue was again discussed in chambers during Curtis's jury trial, and the record indicates some of Curtis's proposed witnesses were federal agents who may have interviewed Curtis regarding a separate case in which he was charged with harassment for sending threatening facsimiles to numerous North Dakota attorneys and judges, but who had not been involved in investigation of the theft charges. *See*

*State v. Curtis*, 2008 ND 93, 748 N.W.2d 709 (upholding Curtis's criminal conviction for harassment).

[¶ 14] Curtis failed to make any showing what these witnesses would have testified to, and failed to show that they would have provided any evidence favorable or relevant to his defense on the theft charge. Accordingly, the district court did not err in failing to issue subpoenas for the witnesses.

[¶ 15] Curtis also asserts his standby counsel had a duty to issue any subpoenas he requested. This Court has cautioned that "a defendant's right to self-representation is not a license to abuse the dignity of the courtroom, nor to ignore rules of procedure." *State v. Hart*, 1997 ND 188, ¶ 6, 569 N.W.2d 451. An attorney participating as standby counsel remains an officer of the court, and he therefore must "always aid in facilitating the judicial process." *State v. Stokes*, 243 N.W.2d 372, 375 (N.D.1976). An attorney also has the duty to raise only issues which are not frivolous, and may not participate in the abuse of legal procedure. *See* N.D.R. Prof. Conduct 3.1.

[¶ 16] Curtis failed to demonstrate that these witnesses had any favorable or relevant testimony to support a legitimate defense to the theft charge. When afforded the opportunity at the pretrial conference to explain the relevance of these witnesses, Curtis launched into a diatribe about the illegality and corruption of the judicial system and money system, labeled the proceedings a "pony show," indicated he wanted the FBI present so he could file charges on the man who had "stolen [his] life," and wanted federal agents present "for my protection from the justice system." In similar circumstances, the court in *United States v. Bell*, 9 F.App'x 733, 735 (9th Cir.2001), held that a defendant's rights to compulsory process and due process were not violated when the attorney acting as his hybrid counsel refused to subpoena federal agents to support the defendant's frivolous claims of government spying and evidence planting.

[¶ 17] Curtis's proffered reasons for seeking to subpoena the witnesses in this case were patently frivolous and do not demonstrate that the witnesses would have provided any relevant or favorable testimony. The failure of the district court and standby counsel to secure the attendance of these witnesses therefore did not violate Curtis's constitutional rights.

### III

[¶ 18] Relying upon *State v. Brakke*, 474 N.W.2d 878 (N.D.1991), and *State v. Meyer*, 361 N.W.2d 221 (N.D. 1985), Curtis contends the district court erred as a matter of law in allowing the criminal proceedings to continue when the matter should have been adjudicated civilly.

[¶ 19] In *Brakke* and *Meyer*, this Court applied what has been termed the "civil dispute doctrine." *See State v. Perreault*, 2002 ND 14, ¶ 7, 638 N.W.2d 541. In *Meyer*, the defendant had been charged with obstructing a public road. The only disputed issue in the case was whether a road across Meyer's property had become a public road by prescription. This Court reversed a judgment of conviction, holding that the dispute was ill-suited for a criminal proceeding and should have been resolved in a civil action:

> [W]here, as here, there is a legitimate dispute as to whether or not the necessary requirements have been met to make the road in question a road by prescription as specified in Section 24–07–01, N.D.C.C., a criminal action is ill-suited to a settlement of that dispute. Rather, we believe the proper procedure

is to institute a civil action wherein the issue of whether or not the road in question has become a public road by prescription may be determined in the atmosphere of civil, rather than criminal, litigation. That procedure appears to be the procedure commonly used in North Dakota in the past to settle these disputes.

*Meyer,* 361 N.W.2d at 222–23 (footnotes omitted).

[¶ 20] In *Brakke,* the defendants were convicted of theft for harvesting crops on land owned by a bank. Brakke had planted crops on the property in the spring, and the bank had subsequently been awarded half of the property in a partition judgment. This Court reversed the convictions, concluding there was a legitimate dispute, which had never previously been addressed by this Court, over ownership of growing crops on land which is subsequently partitioned. We reasoned that "[a] criminal theft trial is not the proper vehicle for resolving property law questions of this nature." *Brakke,* 474 N.W.2d at 882.

[¶ 21] In subsequent cases, however, we have held the civil dispute doctrine is limited to cases where there is a legitimate property or contract dispute that is better suited for resolution in a civil matter. Thus, in *State v. Trosen,* 547 N.W.2d 735, 738–39 (N.D.1996), this Court held that, where an accountant for a nonprofit corporation billed and paid himself for eight quarters of work in a nine-month period, there was no legitimate contract dispute and criminal theft charges were appropriate. We noted, however, that the accountant's actions in paying himself for other fees and expenses beyond the basic contract "might arguably constitute a legitimate contractual dispute better suited for resolution in a civil matter." *Id.* at 738.

[¶ 22] In *Perreault,* 2002 ND 14, ¶ 13, 638 N.W.2d 541, this Court reversed a district court order dismissing theft charges against a principal in a limited liability company who had allegedly written checks against the business's line of credit for his personal obligations. The defendant alleged he had the authority to write checks on the line of credit as a draw on future profits. *Id.* at ¶ 11. Noting that it was undisputed the defendant had written ten checks on a business line of credit to cover his personal debts and submitted phony invoices to the bank to secure release of the funds, this Court concluded that, unlike *Brakke* and *Meyer,* the case did not present a unique question of property law nor did it involve an issue traditionally settled in a civil forum. *Perreault,* at ¶ 10.

[¶ 23] Curtis contends this matter is appropriate for civil resolution because, at the time he acquired the checks and money orders on October 27, 2005, he was authorized by the credit union to withdraw funds from his account. Curtis argues:

> In order for a criminal act to have been committed, there must be a showing that at the time Mr. Curtis purchased the certified checks and money orders, Mr. Curtis somehow knew the check was not good and that Mr. Curtis acted with deceit in obtaining the money.

The State does not contend, however, that the theft occurred on October 27 when Curtis initially received the checks and money orders. Rather, the State alleges that the theft occurred when Curtis "knowingly presented, uttered and cashed money orders for goods and services" after he had been advised by the credit union that the Canadian check was no good and he should return any checks or money orders still in his possession.

[¶ 24] Curtis has not presented any legitimate dispute that he was somehow entitled to the funds after the Canadian check had failed to clear. He does not assert that the Canadian check actually was good and that he therefore had a legitimate claim to the funds. Curtis's only claim to the funds was his frivolous assertion at trial that, once the credit union made a mistake and advised him the funds were available, he should get to keep the money. There is no legitimate dispute presented on a unique issue of property, contract, or other civil law, and the issues in this case would not be more appropriately settled in a civil forum.

[¶ 25] We conclude the district court did not err in concluding this matter was appropriate for criminal proceedings.

### IV

[¶ 26] Curtis contends the evidence was not sufficient as a matter of law to support his conviction of theft of property under N.D.C.C. §§ 12.1–23–02(1) and 12.1–23–05(1).

[¶ 27] Under N.D.C.C. § 12.1–23–02(1), "[a] person is guilty of theft if he ... [k]nowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another with intent to deprive the owner thereof." Under N.D.C.C. § 12.1–23–05(1), theft is a class B felony if the property or services stolen exceed $10,000 in value.

[¶ 28] When a jury verdict is challenged on appeal based on the sufficiency of the evidence, our standard of review is highly deferential to the jury's verdict. *State v. Jacob,* 2006 ND 246, ¶ 6, 724 N.W.2d 118; *State v. Laib,* 2005 ND 191, ¶ 6, 705 N.W.2d 815. When reviewing challenges to the sufficiency of the evidence, we must draw all inferences in favor of the verdict. *State v. Curtis,* 2008 ND 93, ¶ 5, 748 N.W.2d 709; *State v. Barendt,* 2007 ND 164, ¶ 9, 740 N.W.2d 87. We will reverse a criminal conviction only if, after viewing the evidence and all reasonable evidentiary inferences in the light most favorable to the verdict, no rational factfinder could have found the defendant guilty beyond a reasonable doubt. *Curtis,* at ¶ 5; *Barendt,* at ¶ 9.

[¶ 29] Viewing the evidence in the light most favorable to the verdict, and drawing all reasonable evidentiary inferences in favor of the verdict, the evidence shows that Curtis was told on October 28, 2005, that the Canadian check was not good, the funds would be withdrawn from his account, and Curtis should immediately return any checks or money orders still in his possession to the credit union; Curtis thereafter, with knowledge that he was not entitled to keep the money, issued at least fourteen money orders in the amount of $800 each to various third parties; on November 8, 2005, Curtis wrote in an internet posting that he had a "bank discrepancy," he had "set up a pretty good game," he had "a good one going and it plays beautful[sic] in my game plan," "[i]t is still me VS them," and made reference to "the nitty gritty that keeps me out of jail," all allowing an inference that this was part of a planned scheme; and at trial, Curtis testified that all he had done was "cheat a cheater" before they cheated him. We conclude the evidence was sufficient to support the conviction of theft under N.D.C.C. §§ 12.1–23–02(1) and 12.1–23–05(1).

### V

[¶ 30] We have considered the remaining issues and arguments raised by the parties and find them to be without merit, unnecessary to our decision, or expressly waived. We affirm the judgment of conviction.

[¶ 31] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.