STATE of North Dakota, Plaintiff and Appellee,

v.

Kurtis P. MARTIN, Defendant and Appellant.

Crim. No. 1141.

Supreme Court of North Dakota.

July 23, 1986.

---

Tom Henning, Asst. States Atty., Dickinson, for plaintiff and appellee.

Freed, Dynes, Reichert & Buresh, Dickinson, for defendant and appellant; argued by Ronald A. Reichert.

ERICKSTAD, Chief Justice.

Kurtis P. Martin, the defendant, appeals from a criminal judgment of conviction and sentence of the county court of Stark County entered following a jury verdict which convicted him of "DRIVING WHILE UNDER THE INFLUENCE OF ALCOHOL." We affirm.

On March 25, 1984, Martin was stopped by North Dakota Highway Patrolman Dean Franchuk while driving a motor vehicle on Interstate 94, east of Dickinson, North Dakota. After administering certain field sobriety tests, Officer Franchuk placed Martin under arrest for driving under the influence of alcohol. Martin was then taken to the Law Enforcement Center in Dickinson, where Officer Dana King, a certified Breathalyzer operator for the North Dakota Highway Patrol, conducted a Breathalyzer test on Martin. The result of the Breathalyzer test indicated that Martin had a .17 percent blood alcohol concentration.

Martin was charged with driving while under the influence of alcohol and driving while having a blood alcohol concentration of .10 percent or greater. Martin entered a plea of not guilty and the case was scheduled for trial. Two trials were held on the same charges. The first trial ended in a hung jury, the second in a verdict of guilty of driving while under the influence of alcohol.

In preparing for the first trial, Martin made a motion, on April 24, 1984, for discovery in which he requested the court to order the prosecution to furnish among other items:

"m. Assuming that simulator tests were performed before and after test given to defendant on Breathalyzer,

the test dates and the names of persons who performed these tests just before and just after the test given to defendant

"n. Assuming that the Breathalyzer was inspected, serviced, checked for accuracy and certified in proper working order, the dates and the names of the operators who did this just before and after the breath test was given to defendant on it"

The State then requested a hearing pursuant to Rule 16(d), N.D.R.Crim.P., for the purpose of reviewing Martin's discovery request. Following a hearing on May 15, 1984, before the county court, the substance of which does not appear in the record before our Court, the county court made the following order in granting Martin's motion for discovery:

"IT IS THEREFORE THE ORDER OF THE COURT that the State shall furnish copies of the Defendant's North Dakota driver's license abstract, case summary, influence report form, Form 106 and test records of the breathalyzer test to the Defendant if it has not already done so; the names of addresses of witness the State intends to call at trial and a list of the exhibits that the State intends to introduce."

The State responded to the Court's discovery order on March 15, 1985, by providing Martin with the names and addresses of the witnesses the State intended to call at the trial and with a copy of Martin's North Dakota driver's license abstract, case summary, influence report form, Form 106, and test records of the Breathalyzer test. Martin did not object to the State's return of discovery as being deficient or not in compliance with the court's order. He also did not request the court to expand its discovery order to include information not provided by the State.

Also in preparing for the first trial Martin's attorney issued a *subpoena duces tecum* to the Dickinson Police Department, directing the officer at the police department "who tested standard solution 258 for Machine S/N 001403 (simulator) on instru-

ment S/N 2031 for the last inspection time prior to March 25, 1984, ... to appear before the County Court ... and there to testify ... [and] ... to bring all records concerning the certification of that standard solution and Breathalyzer machine S/N 2031 and Machine S/N 001404 (simulator) and present [them] at the time of such testimony."

A jury trial was held on March 11, 1985. During the course of this trial, the State attempted to introduce into evidence the results of the Breathalyzer test. Upon objection by Martin, the Court excluded the results of the Breathalyzer test, apparently on the basis of lack of foundation. Following deliberations, the jury was unable to reach a unanimous decision and was discharged on March 11, 1985. The case was scheduled for a second trial.

Nothing in the record pertaining to the second trial indicates that Martin renewed his motion for discovery or issued another *subpoena duces tecum.*

The second trial was held on October 28, 1985. At this trial, the State succeeded in having the results of the Breathalyzer admitted into evidence. During the course of the trial, Martin's attorney questioned Captain Henry Weber, an officer of the Dickinson Police Department who was responsible for caring for the Breathalyzer at the Law Enforcement Center in Dickinson, concerning certification records of the standard solution of the simulator, an auxiliary piece of equipment used in conjunction with the Breathalyzer. *See, Schense v. Hjelle,* 386 N.W.2d 888, 889 n. 1 (N.D.1986). Captain Weber testified that he did not have any records concerning the certification of the standard solution, that all records on the standard solution were kept by the State Toxicologist at his office in Fargo, and that no copy of those records were kept at the Dickinson Police Department. Martin then made a motion for mistrial on the basis that the State had not obeyed the *subpoena duces tecum.* The court, however, denied this motion on the basis that the *subpoena duces tecum* was issued by Martin's attorney for the first trial held on

March 11, 1985, and had not been reissued for the second trial. Martin then made a motion for a continuance to have time to obtain the records concerning the test performed by Captain Weber on the standard solution of the simulator. This motion was denied.

Following deliberations, the jury found Martin guilty of the crime of "DRIVING WHILE UNDER THE INFLUENCE OF ALCOHOL."

On appeal, Martin raises four issues:

*"1. What sanctions may be brought against the state for failure to comply with discovery?*

*"2. If stronger sanctions are not allowed, was the Defendant denied due process when a continuation was denied by the trial court to allow time for the police department to obtain the documents?*

*"3. Is the simulator a machine or device that needs to be separately tested and inspected and shown to be tested or inspected by the State Toxicologist?*

*"4. Is exclusion of any evidence regarding the breathalyzer proper when there has been no documentation provided by the state or testimony of the State Toxicologist regarding the simulator?"*

Since the date that Martin filed his notice of appeal, we issued our decision in *Schense v. Hjelle*, 386 N.W.2d 888. Our decision in *Schense* necessitates a negative answer to issues number three and four quoted above. In *Schense* we found that the Legislature "by its use of the term 'devices' in the statute, did not intend to expand the certification and approval requirements of the State Toxicologist to include auxiliary equipment" [1] such as the simulator. *Schense v. Hjelle*, 386 N.W.2d at 890. We concluded "that the term 'devices' as used in the statute refers to the testing equipment used to perform the chemical analysis of the subject sample, and not to auxiliary equipment or devices [such as the simulator] used during the testing procedure." 386 N.W.2d at 890. We also said that "[u]pon a proper record, we might be persuaded that an auxiliary device used in the testing sequence is of such a nature that, absent specific approval and certification of the device by the State Toxicologist, the test results would be so fraught with the possibility of error that the test could not be considered to be 'fairly administered' within the meaning of the statute." 386 N.W.2d at 891. As it was in *Schense*, "[t]he record in this case falls far short of such persuasion." 386 N.W.2d at 891. Even assuming that the simulator used in the present case was defective in some manner, which Martin has not established, Martin has failed to establish how a defect in the simulator could affect the test results of the Breathalyzer. *See, Schense*, 386 N.W.2d at 891. As he could have subpoenaed the State Toxicologist and all pertinent records, without cost to him, and did not do so, he is not in a strong position to assert that he has been prejudiced by the State's failure to produce records allegedly not known to exist by the state's attorney,

1. In *Schense,* we were considering Section 39–20–07(5)(6). Basically, in the instant case, Martin relies upon the language of the last sentence of Section 39–20–02, N.D.C.C., which as of the 1983 Session Laws, read:

"Upon the request of the person who is tested, full information concerning the test or tests taken at the direction of the law enforcement officer shall be made available to him."

That language, however, must be construed in light of the strong language in the change in Section 39–20–07(5) contained also in Chapter 415, in Section 29 of the 1983 Session Laws. The pertinent change is demonstrated in legislative style:

"5. The results of ~~such~~ *the* chemical analysis ~~shall~~ *must* be received in evidence when it is shown that *the sample was properly obtained and* the test was fairly administered, ~~provided that a~~ *and if the* test ~~of a person's blood, urine, breath, or other bodily substance and the result thereof~~ is ~~further~~ shown to have been performed according to methods ~~or~~ *and* with devices approved by the state toxicologist, ~~or both,~~ and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist." 1983 N.D.Sess.Laws, Ch. 415, § 29.

While not affecting the outcome of this case, Martin's argument that we should apply the 1983 statute as opposed to applying the 1985 statute retroactively is supported by *City of Mandan v. Mi-Jon News, Inc.*, 381 N.W.2d 540, 544 (N.D.1986).

not kept by the officer subpoenaed, and not required to be filed with the clerk of court.[2] Prior to amendments made by the Legislature in 1985, which are not relevant to the outcome of this case, Section 39–20–07(9), N.D.C.C. (1983), provided:

"9. Notwithstanding any statute or rule to the contrary, the defendant may subpoena, without cost to the defendant, the person who conducted the chemical analysis referred to in this section to testify at the trial on the issue of the amount of alcohol, drugs, or a combination thereof in the defendant's blood, breath, saliva, or urine at the time of the alleged act." Section 39–20–07(9), N.D.C.C.

Let us next consider the issue of what sanctions may be brought against the State for failure to comply with discovery. Rule 16(d)(2), N.D.R.Crim.P., provides in pertinent part:

*"Failure to Comply With Request.* If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Rule or with an order issued pursuant to this Rule, the court may order that party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, relieve the requesting party from making a disclosure required by this Rule, or it may enter such other order as it deems just under the circumstances."

██ Martin argues that the State failed "to comply with the Defendant's *motion* for discovery" by failing to provide Martin with the test dates and the names of the persons who performed the test on the simulator. [Emphasis added as there actually was no motion made in conjunction with the second trial.] As noted earlier herein, the county court held a hearing and issued an order in response to Martin's

motion for discovery. While the order itself does not explicitly state that certain requests made by Martin in his motion for discovery were not granted, a review of the order suggests that such is the case. Martin's argument appears to suggest that the State is required to comply with his *motion* for discovery irrespective of the court's *order* for discovery. Rule 16(d), N.D.R. Crim.P., provides otherwise. Rule 16(d)(1) states:

"Upon a sufficient showing the court at any time may order that the discovery or inspection be denied, restricted, or deferred or make such other order as is appropriate."

To require the State to comply with a defendant's *motion* for discovery when the court, after consideration, has issued an *order* for discovery pursuant to Rule 16(d), N.D.R. Crim.P., which has failed to grant part of the motion would be inconsistent with the Rule. The State should not be required to do more than required by the order, especially in the instant case where Martin did not object to the court's order when issued, made no attempt to have the court modify its order, and had not even, at this stage, alleged that the order was unreasonable or improper. Martin has not shown the county court or this Court on appeal how the State has in any way failed to comply with the court's order for discovery. As Martin has not shown that the State did not comply with the Court's order for discovery, we believe the trial court was correct in not imposing sanctions against the State pursuant to Rule 16(d)(2), N.D.R.Crim.P.

██ Martin also asserts that the State, through its agent Captain Weber of the Dickinson Police Department, failed to comply with the *subpoena duces tecum.* However, as properly recognized by the county court, the *subpoena duces tecum* issued by Martin was issued for the first

---

2. To this date, Martin has not pursued further his effort to secure a copy or copies of the information sought by subpoena for presentation to the trial court in support of a motion for new trial. Thus, to this date, we do not know the possible significance of the material nor has it even been asserted to us, except in possible use in cross examination without any rationale being stated.

trial held on March 11, 1985, and was not reissued by Martin for the second trial held on October 28, 1985. If Martin wanted to insure the production, at the second trial, of documents allegedly in possession of Captain Weber, he should have reissued the *subpoena duces tecum*. We believe the effect of the *subpoena duces tecum* expired at the conclusion of the first trial, relieving Captain Weber of the duty of appearing at the second trial in the absence of another subpoena indicating otherwise.[3]

Martin's final argument is that he was denied due process when the trial court refused to grant a continuance to allow time to obtain the records concerning the test performed by Captain Weber on the standard solution of the simulator. Whether or not a continuance should be granted during a criminal trial is a matter within the sound discretion of the trial court and will not be disturbed on appeal unless there has been an abuse of discretion. *State v. Kania*, 341 N.W.2d 361, 365 (N.D.1983); *State v. Berger*, 234 N.W.2d 6, 9 (N.D.1975). An abuse of discretion is the equivalent of acting unreasonably, arbitrarily, or unconscionably. *State v. Kania*, 341 N.W.2d at 365. Considering that Martin did not object to or request an expansion of the court's order for discovery, did not reissue the *subpoena duces tecum*, and did not subpoena the State Toxicologist or secure another expert concerning any possible adverse effect a defect in the simulator may have had on the Breathalyzer, but instead waited until midway through the trial to raise the issue, we believe that the trial court did not abuse its discretion in denying Martin's motion for continuance.

While it may have been within the county court's discretion to disrupt the trial midway and grant Martin's motion for continuance, we do not believe, in light of Martin's failure to take advantage of the opportunities available to him, that the trial court acted unreasonably, arbitrarily, or unconscionably in denying Martin's motion for continuance.

Martin also asserts in connection with this argument, that his due process rights under the federal constitution, as expounded in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), were violated when the State did not comply with discovery. As we have noted earlier herein, Martin has failed to show how the State has not complied with the court's discovery order and we do not believe Martin's motion overrides the court's order. Our review of the record indicates that the State provided Martin with everything listed in the court's order for discovery. If Martin believed something additional was necessary for the presentation of his defense, he should have so indicated to the court prior to trial when time would have been available to secure it. The State's action in this case cannot be reasonably interpreted as "suppression by the prosecution of evidence favorable to an accused

---

3. Rule 17(a)(b), N.D.R.Crim.P. states as follows:
   "*(a) For Attendance of Witnesses and Production of Evidence: Form; Issuance.*
   "(1) Every subpoena must be issued by the magistrate or the clerk of court, state the name of the court and the title of the action, and command each person to whom it is directed to attend and give testimony at a *time* and place therein *specified*. The clerk or magistrate shall issue a subpoena, or a subpoena for the production of documentary evidence or objects, signed but otherwise in blank, to a party requesting it, who shall fill it in before service." [Emphasis added.]
   "(2) A subpoena, or a subpoena for the production of documentary evidence or objects, may also be issued by the attorney for a party to any proceeding in the name of the court in like manner and with the same effect as if

issued by the clerk or magistrate. Such subpoena must be subscribed in the name of the attorney, together with his office address, and must identify the party for whom he appears.
   "*(b) Defendants Unable to Pay.* The court shall order at any time that a subpoena be issued for service on a named witness upon an ex parte application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. If the court orders a subpoena to be issued, the costs incurred by the process and the fees of the witness so subpoenaed must be paid in the same manner in which similar costs and fees are paid in the case of a witness subpoenaed in behalf of the prosecution."

... where the evidence is material either to guilt or to punishment," and thus, does not violate due process.[4] *Brady v. Maryland,* 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218.

For the reasons stated herein, we affirm the decision of the county court.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

---

4. In *Brady,* the defendant and his companion, Boblit, were found guilty of murder in the first degree and were sentenced to death. The Maryland Court of Appeals held that suppression of evidence by the prosecution denied Brady due process of law and remanded the case for a retrial of the question of punishment, not the question of guilt. The United States Supreme Court granted certiorari and affirmed the decision of the Maryland Court of Appeals. The evidence suppressed was a statement of Boblit in which he admitted the actual homicide. Bra-dy had taken the stand and admitted that he participated in the crime but he claimed that Boblit did the actual killing. In writing for the majority, Justice White said, "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 83 S.Ct. 1194 at 1196–97. Obviously, *Brady* is clearly distinguishable on its facts.