2009 ND 34

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Danial Ray CURTIS, Defendant and Appellant.**

**No. 20080007.**

Supreme Court of North Dakota.

April 2, 2009.

Mark Rainer Boening, Assistant State's Attorney, Fargo, for plaintiff and appellee.

Mark Taylor Blumer, Valley City, for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Danial Ray Curtis appeals from a criminal judgment entered after a jury found him guilty of assaulting a police

officer, disarming or attempting to disarm a law enforcement officer and preventing arrest or discharge of other duties. Curtis claims he was denied a fair trial because he did not receive assistance in subpoenaing witnesses for trial and because the district court failed to follow the appropriate procedure for answering requests from the jury during its deliberations. We hold Curtis's request for subpoenas was not timely and the error involving the jury requests was harmless beyond a reasonable doubt. We affirm.

I

[¶ 2] In February 2007, the State charged Curtis with simple assault on a peace officer, attempting to disarm a law enforcement officer, preventing arrest or discharge of other duties, and criminal mischief. The charges stemmed from a February 4, 2007, altercation between Curtis and Fargo law enforcement officers while the officers were attempting to arrest Curtis.

[¶ 3] The district court granted Curtis's application for court-appointed counsel, and Patrick O'Day was appointed to represent Curtis. A jury trial was scheduled for September 11, 2007, and Curtis appeared with counsel that day. However, the trial was continued after Curtis stated he wanted to represent himself, and the court ordered him to undergo a competency examination, resulting in a determination that he was competent to stand trial and to assist his defense.

[¶ 4] On November 1, 2007, O'Day moved to withdraw as counsel, stating Curtis had "repeatedly insisted upon representing himself" and had "stated unequivocally on the record" at least two to three times at the September 11, 2007 hearing "that he did not desire to have his attorney represent him." A hearing on O'Day's motion to withdraw was scheduled for November 14, 2007, but Curtis did not appear at the hearing. The record does not reflect that the district court ruled on the motion before trial; however, during jury selection on December 4, 2007, O'Day informed the district court that Curtis wanted to represent himself. After an extended colloquy with Curtis, the court granted his request to represent himself and ordered O'Day to assist Curtis as standby counsel.

[¶ 5] After jury selection, Curtis informed the district court he "need[ed] more time for [his] subpoena powers, to subpoena the doctor that was involved in the case. I've not had time to work out all the subpoena things." Curtis explained his "whole case wraps around a doctor. If you're not going to proceed with the doctor being here—I want her to be here. I need more time, because I can't defend myself with this last minute separation." The court stated the "last minute separation" was a result of Curtis's choice to represent himself and treated his request as a motion for a continuance, which the court denied.

[¶ 6] At trial, Fargo Police Officer Bret Witte testified that on February 4, 2007, Curtis did not have a valid driver's license and there were outstanding warrants for his arrest. Witte testified he observed Curtis driving a motor vehicle in Fargo, he activated the flashing lights on his patrol car to make a traffic stop and he approached Curtis's vehicle as it was turning into a driveway at Curtis's residence. Witte testified he saw Curtis exit "the vehicle quickly and begin jogging towards his residence" and he shouted at Curtis to "stop." According to Witte, Curtis "continued jogging toward his residence" and he apprehended Curtis near the residence where an altercation ensued between them. During the altercation, other Fargo police officers arrived at the scene, includ-

ing Officers William Ahlfeldt, Sarah Rasmussen, Brad Zieska and Jason Loos. Witte testified he used pepper spray on Curtis and, with the other officers, eventually subdued and arrested Curtis. There was evidence that Officer Witte's taser was broken during the altercation, that Curtis attempted to grab Officer Ahlfeldt's gun, that Officer Rasmussen deployed her taser on Curtis and that the officers used force to subdue Curtis. At trial, the State introduced into evidence and played a video and audio recording of the altercation, which was recorded from Officer Ahlfeldt's patrol car.

[¶ 7] According to Curtis, his son, Shane, was driving the vehicle that night, and Curtis came out of his residence when Shane arrived there. Curtis testified he did not know who grabbed him and he thought he was being mugged. During trial, Curtis reiterated that he wanted to exercise his subpoena powers but did not know how to issue subpoenas and that his court-appointed counsel had not helped him. Curtis also identified several potential witnesses he wanted at trial, including his son, his brother and his probation officer.

[¶ 8] The jury began deliberations at about 5:15 p.m. on December 5, 2007. At about 5:50 p.m. on December 5, the jury asked to "have a laptop to view [the recording from Officer Ahlfeldt's patrol car] in the jury room." The district court considered that request on the record outside the presence of the jury with the prosecuting attorney, Curtis and O'Day present and decided to play the video and audio recording the next morning for the jury in open court. At about 9:00 a.m. on December 6, the court played the video and audio recording for the jury in open court with the prosecuting attorney, Curtis and O'Day present. The jury thereafter continued its deliberations.

[¶ 9] At about 11:50 a.m. on December 6, the district court met in open court on the record outside the presence of the jury with the prosecuting attorney and O'Day. The record reflects Curtis was not present because he had been taken by ambulance to a Fargo hospital for a medical emergency. The court informed the prosecuting attorney and O'Day that the jury had submitted a second request to the court at about 10:50 a.m. to "listen to audio of Officer Ahlfeldt's car video" for a specific time frame and asked to have that "time frame played twice." The court asked the prosecutor for his thoughts on how to proceed, and the prosecutor recommended allowing the jury to continue to deliberate and offered to do some additional legal research on the issue of Curtis's absence. The court offered standby counsel an opportunity to respond, and O'Day informed the court his role was standby counsel and he could not speak on behalf of Curtis. The court allowed the jury to continue deliberating without answering the second request or otherwise communicating with the jury.

[¶ 10] At about 1:35 p.m., the court met on the record outside the presence of the jury with the prosecuting attorney and O'Day and informed them a third request had been received from the jury at about 12:50 p.m. That request referred to the recording from Officer Ahlfeldt's car and read "could we have a laptop to view the [video and audio recording]? (In the jury room)." O'Day stated he had telephoned Curtis at the hospital and Curtis demanded to be present during the proceedings. The court and the prosecuting attorney discussed how to proceed on the record. The court was then informed Curtis would be returning "to the courtroom shortly" and recessed for the next half hour without answering the two requests or otherwise communicating with the jury.

[¶ 11] The jury continued to deliberate, and at about 2:30 p.m., while Curtis was still at the hospital, the jury indicated it had reached a verdict. The court met with the prosecutor and O'Day on the record and informed them that Curtis would not be returning to the courtroom from the hospital that day and the jury had reached a verdict. After further discussions on the record with the prosecuting attorney and with O'Day present about how to proceed, the court accepted sealed verdicts from the jury in open court while Curtis was absent. The court reconvened on December 7 with the attorneys, Curtis and the jury present and opened the sealed verdicts in open court. In those verdicts, the jury found Curtis guilty of assaulting a police officer, disarming or attempting to disarm a law enforcement officer, preventing arrest or discharge of other duties and not guilty of criminal mischief.

II

[¶ 12] Curtis argues he was denied his state and federal constitutional rights to a fair trial because he did not receive assistance in subpoenaing his witnesses. Curtis claims that his son, Shane, would have testified Shane was driving the vehicle on February 4, 2007; that Curtis's brother would have testified about his observations during the arrest and that Curtis's probation officer would have testified there were no outstanding warrants for Curtis's arrest. Curtis asserts his proffered reasons for subpoenaing those witnesses indicated they would have provided favorable and material testimony to aid his defense. He argues the failure of the district court and standby counsel to secure the attendance of those relevant and favorable witnesses violated his constitutional rights.

[¶ 13] In *State v. Curtis*, 2008 ND 108, ¶ 12, 750 N.W.2d 438, we outlined require-ments for a criminal defendant's constitutional right to compulsory process for procuring attendance of witnesses:

"A criminal defendant's Sixth Amendment right [to compulsory process] is not absolute, and does not guarantee the right to secure the attendance and testimony of any and all witnesses. *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982); *State v. Hilgers*, 2004 ND 160, ¶ 25, 685 N.W.2d 109; *State v. Stockert*, 2004 ND 146, ¶ 12, 684 N.W.2d 605; *State v. Treis*, 1999 ND 136, ¶ 11, 597 N.W.2d 664. The trial court 'is not obligated to issue every subpoena requested by a defendant.' *Hilgers*, at ¶ 32. The defendant has the burden of showing that the testimony would have been both favorable and material to his defense. *Valenzuela–Bernal*, at 867, 102 S.Ct. 3440; *Hilgers*, at ¶ 25; *Stockert*, at ¶ 12; *Treis*, at ¶ 11. 'Whether the district court's refusal to issue a subpoena violates the Sixth Amendment is a question of law, and our standard of review for a claimed violation of a constitutional right is de novo.' *Hilgers*, at ¶ 25 (quoting *Treis*, at ¶ 11); *see also Stockert*, at ¶ 12."

[¶ 14] According to Curtis, the witnesses he claims should have been subpoenaed would have provided favorable and material testimony for his defense. Curtis's claims, however, are intertwined with his decision to represent himself and with the timing of his requests.

[¶ 15] "[A]s a corollary to a criminal defendant's Sixth Amendment right to counsel, the defendant also has a right to self-representation if the defendant knowingly and intelligently elects to proceed pro se." *State v. Hart*, 1997 ND 188, ¶ 6, 569 N.W.2d 451 (citing *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). This Court

has explained, that "a defendant's right to self-representation is not a license to abuse the dignity of the courtroom, nor to ignore rules of procedure." *Hart*, at ¶ 6. A court may appoint "'standby counsel' to assist the defendant and to represent the defendant if termination of self-representation is necessary." *Hart*, at ¶ 6 (citing *Faretta*, at 834 n. 46, 95 S.Ct. 2525). However, there is no constitutional right to standby counsel or to hybrid representation. *See State v. Ochoa*, 2004 ND 43, ¶ 29, 675 N.W.2d 161; *City of Fargo v. Rockwell*, 1999 ND 125, ¶ 18, 597 N.W.2d 406. "An attorney participating as standby counsel remains an officer of the court, and he therefore must 'always aid in facilitating the judicial process.'" *Curtis*, 2008 ND 108, ¶ 15, 750 N.W.2d 438 (quoting *State v. Stokes*, 243 N.W.2d 372, 375 (N.D.1976)). "[T]here is no federal or state constitutional right to standby counsel." *Rockwell*, at ¶ 18. In *Rockwell*, we explained:

"'Absent a constitutional right to standby counsel, a defendant generally cannot prove standby counsel was ineffective.' 'As the word "standby" implies, standby counsel is merely to be available in case the court determines that the defendant is no longer able to represent himself or in case the defendant chooses to consult an attorney.' As a practical matter, standby counsel does not represent the defendant; the defendant represents himself and may or may not chose to consult with his standby counsel during the course of the proceedings. The duties and responsibilities of standby counsel are understandably less than the obligations of retained or appointed counsel. Thus, standby counsel is not 'counsel' within the context of the Sixth Amendment."

*Id.* at ¶ 19 (citations omitted).

[¶ 16] . The record indicates there were some delays in this case, including a continuance for a competency examination after Curtis said he wanted to represent himself and a delay when Curtis did not show up for a hearing on O'Day's motion to withdraw as counsel. On the first day of trial during jury selection and after an extended discussion with Curtis about the dangers of self-representation, the district court granted Curtis's request to represent himself and designated O'Day as standby counsel. Curtis does not claim that he did not knowingly and intelligently waive his right to counsel, *see Hart*, 1997 ND 188, ¶ 6, 569 N.W.2d 451, and the court informed Curtis that standby counsel was available to assist Curtis, but was not representing him.

[¶ 17] After the jury was chosen, the following colloquy occurred:

"MR. CURTIS: As far as I'm aware, if I'm counsel today, I need more time for my subpoena powers, to subpoena the doctor that was involved in the case. I have not had time to work out all the subpoena things. I've been asked by the doctor that said I should have the right to have subpoena rights. The only non-official, non-police officer person, is not going to be here, and that my whole case wraps around a doctor. If you're not going to proceed with the doctor being here—I want her to be here. I need more time, because I can't defend myself with this last minute separation.

"THE COURT: The last minute separation was of your own choosing, in regards to this matter, Mr. Curtis.

"MR. CURTIS: No, I've been arguing counsel forever. I've asked for help forever, and I dismissed you a long time ago.

"THE COURT: Your continuance request is denied pursuant to the applicable rules. The matter was charged back February 5, 2007, when it was filed.

"First appearance was shortly thereafter in front of the Court. There has been multiple appearances in regards to this matter, including non-appearances. First appearances, contested prelim[inary hearing], Mr. O'Day was your counsel all through these proceedings, all the way up to this morning.

"There was a discussion at the last jury trial before the Court required an evaluation to be done where you indicated you might want to have—and represent yourself. That was fine and good, but the Court needed that evaluation back before I allowed you to knowingly and voluntarily do so. That is fine and good.

"Mr. O'Day motioned this—set this for hearing a couple weeks ago. You did not show up. There has been weeks you've been out of custody since you've been back here from the State Hospital. You've had weeks to request of the Court to represent yourself.

"You were read your rights at your initial appearance. You understand your right to an attorney. You've been through the process multiple different times. You've represented yourself on certain occasion. You've had public defenders represent yourself on different occasion. You know what is going on, you know how the system works, you've been involved in the system multiple times.

"The Court will not grant another continuance. This matter has been pending long enough. You, yourself, asked for a speedy trial a few months ago, quite frankly."

[¶ 18] Later during trial, Curtis stated there were other individuals he wanted to testify, including his son, his brother and his probation officer. The court informed Curtis that it could not give him legal advice and that he should consult with his standby counsel about the appropriate procedure for subpoenaing witnesses. The court also reminded Curtis that O'Day was standby counsel and was not Curtis's attorney.

[¶ 19] On the second day of trial, Curtis informed the court:

"MR. CURTIS: I do have the Jamestown eval[uation] that states, I do not know how to write, I do not know how to do the subpoenas. I have went downstairs and talked to the Clerk of the Courts and they will help me with my subpoenas. Or, if Mr. Pat O'Day will do the proper training for me, I just do not trust him to go forward on this case.

"THE COURT: You don't have to. That is why you are representing yourself, okay. That is your choice. That is your knowing and voluntary choice. That is all we can do, Mr. Curtis, okay.

. . . .

"Mr. O'Day is available for discussion if you want to ask him a question. We are not going to have further conversation about this. If it becomes a problem, you are going to be removed. I cannot be any more clear on this, okay. I can't help you.

"MR. CURTIS: I don't want you to help me. I want the papers that are properly legally written out.

"THE COURT: I am not a lawyer, and I am not representing you any more than I am [representing the prosecuting attorney]. I've explained this to you. I cannot do it for you. That is not my obligation. It is not my responsibility, and contrary to North Dakota law, for me to tell you what to do and how to do it correctly."

[¶ 20] Thereafter, Curtis again claimed his witnesses, including his son, his brother and his probation officer, had not been subpoenaed and the court ruled:

"THE COURT: ... The Court being fully advised in the premises, best I can tell, the best way that I could come up with, what is reasonable, the request for a continuance, that is denied, as set forth by [the prosecuting attorney] on the record. The matter has been pending since last February. There's been multiple hearings in regards to the matter. Mr. O'Day has represented him all the way through for many, many, many months, up until the morning of this trial. In fact, Mr. O'Day started the trial as defense counsel.

"Now, what Mr. O'Day's theory of defense was, and whether agreed with or disagree with, or was different, a little bit, or greatly, than what Mr. Curtis had hoped for or had communicated to Mr. O'Day or didn't communicate to Mr. O'Day, but believed maybe should have been communicated to Mr. O'Day, or all that stuff, I have no idea. Okay, and that's not for this trial.

"We're not in a trial here about Mr. O'Day. We're not in a trial here about that. What we are here in trial for, is the allegations by the State of North Dakota against the Defendant.

"This matter has been set for trial previously in September, had to be continued, was continued. There has been multiple continuances—well I shouldn't say multiple. There's been a prior continuance in regards to this matter. It was even set for hearing a couple weeks ago to clarify the issue about pro se or not pro se, as he had requested pro se at some point in time.

"The morning of the last jury trial that was set, people were supposed to be ready to go for trial September 11th, so right now isn't any great surprise. We're in December, okay. You should have been ready at that point in time, Mr. Curtis.

"That being said, it was continued, as stated by the Court and record for those reasons, in regards to the matter. We even had a hearing later, because after we got the State Hospital report, the Court was more comfortable addressing in a colloquy form, pursuant to North Dakota law with the Defendant, but he didn't show up for that, and it was noticed for hearing, in regards—

"MR. CURTIS: I didn't know about that.

"THE COURT: Okay, it was noticed for hearing. It's in the Court's file, it's a matter of record. We'd had the hearing, you didn't show up, we couldn't go any further. So then, the morning of trial, we have a discussion in regards to this matter, and quite frankly, that's a matter of record now. After the Defendant was 20 minutes late for Court, as he was 10 minutes this afternoon, we had that discussion. We've had these discussions. I've excused the jury for the appropriate colloquy.

"The Defendant knows what is going on, he's done this before, he's had other trials before. There's been multiple time to prepare for trial, including subpoena, he's aware of his subpoena right, it was read to him at his initial appearance in regards to this matter. It has been read to him in regards to his appearances in—initial appearances in other matters in regards to this matter. The Court's indicated that.

"The Court hasn't denied anything in regards to this matter. There's been ample time to prepare. Now, at this late stage after we've done multiple things in trial, now we're at the point of, in the middle or towards the end, or somewhere in the defense case, is not a reasonable time for the Court to grant a continuance. There has been ample time—months since the original trial

was set to prepare for trial, to issue subpoenas, which is an entitlement of the defense, as well as the State of North Dakota.

"A continuance is not reasonable or appropriate. It will not be granted pursuant to the applicable rule in regards to this matter, which I believe, is 46, off the top of my head—I'll take a quick look here—or otherwise, in regards to this matter.

"The requested witnesses are not here, through no fault of the Court, through no fault of anyone. The Defendant chose voluntarily, knowingly, intelligently, chose to represent himself.

"Maybe Mr. O'Day wasn't going to use those witnesses—didn't think they were relevant—didn't think they were material—didn't think they were appropriate, as an officer of the Court. I don't know, and I don't know that to be the case, but nonetheless, when the Defendant takes over the case as counsel, he takes over the case as counsel. He decided to do that the morning of trial, actually, once we had the trial started. That is the lay of the land and the way it is."

[¶ 21] In criminal proceedings, N.D.R.Crim.P. 17 authorizes the issuance of subpoenas by the clerk or magistrate, or by the attorney for a party to any proceeding. Subject to the requirement for a defendant to show testimony is favorable and material, "[t]he clerk or magistrate shall issue a signed blank subpoena ... to the party requesting it, and that party must fill in the blanks before the subpoena is served." *See* N.D.R.Crim.P. 17(a)(1). An attorney for a party also may issue a subpoena in the court's name under N.D.R.Crim.P. 17(a)(2).

[¶ 22] This Court has recognized that under N.D.R.Crim.P. 17, a subpoena must be served within a reasonable time before the witness's scheduled appearance, and whether service is within a reasonable time depends on the circumstances of each case. *State v. Ganje*, 481 N.W.2d 227, 228–29 (N.D.1992). This Court has also held that a county court did not abuse its discretion in denying a defendant's motion for a continuance where the defendant did not reissue a subpoena duces tecum for a second trial and did not subpoena a state toxicologist or secure another expert regarding a Breathalyzer test. *State v. Martin*, 391 N.W.2d 611, 615–16 (N.D.1986). In *Martin*, the defendant waited until midway through trial to raise claims regarding issuance of a subpoena. *Id.* at 616. This Court rejected the defendant's due process argument after the court refused to grant a continuance to allow the defendant to obtain evidence about a Breathalyzer test. *Id.*

[¶ 23] Here, Curtis chose to represent himself during trial after being fully advised of the responsibilities of self-representation. Curtis does not claim his decision to represent himself was not knowingly and intelligently made. *See Hart*, 1997 ND 188, ¶ 6, 569 N.W.2d 451. Curtis was informed the rules of procedure would not be modified because he was representing himself. *See State v. Dvorak*, 2000 ND 6, ¶ 16 n. 1, 604 N.W.2d 445. The record further reflects Curtis was informed standby counsel's role was advisory, relieving the district court of the need to explain procedures to Curtis. *See Rockwell*, 1999 ND 125, ¶¶ 18–19, 597 N.W.2d 406; *Hart*, at ¶ 14. We conclude Curtis's request to subpoena witnesses in the middle of trial after he decided to represent himself was not timely, and we reject his claim that his constitutional right to a fair trial was violated because he did not receive assistance in subpoenaing his witnesses.

## III

[¶ 24] Curtis argues he is entitled to a new trial because the district court failed to follow statutory procedures under N.D.C.C. § 29–22–05 for answering questions from the jury. He contends he did not waive his right to be present when the court considered questions from the jury and the court violated his rights by failing to bring the jury into the courtroom. He asserts the court erred in having continuous on-the-record ex parte communications with the prosecuting attorney when he was not present. He claims the record also establishes there were off-the-record, ex parte discussions between the court and the prosecuting attorney.

[¶ 25] Section 29–22–05, N.D.C.C., outlines a statutory procedure for dealing with jury questions during jury deliberations and provides:

"After the jurors have retired for deliberation, if they desire to be informed on a point of law arising in the cause, or to have any testimony about which they are in doubt or disagreement read to them, they, upon their request, must be conducted into the courtroom by the officer who has them in custody. Upon their being brought into court, the information required must be given in the presence of, or after notice to, the state's attorney and the defendant or the defendant's counsel, or after they have been called."

[¶ 26] Section 29–22–05, N.D.C.C., explicitly applies to jury questions on a "point of law" and jury requests to have testimony read, and " 'this Court has long construed the statute to require that all communications with the jurors, after a case has been submitted to them, must be made in open court and in the presence of the defendant.' " *State v. Kruckenberg,* 2008 ND 212, ¶ 13, 758 N.W.2d 427(quoting *State v. Parisien,* 2005 ND 152, ¶ 8,

703 N.W.2d 306). *See State v. Fehl–Haber,* 2007 ND 99, ¶ 11, 734 N.W.2d 770; *State v. Austin,* 2007 ND 30, ¶ 19, 727 N.W.2d 790; *State v. Klose,* 2003 ND 39, ¶¶ 33–34, 657 N.W.2d 276; *State v. Jahner,* 2003 ND 36, ¶¶ 6, 8, 657 N.W.2d 266; *Hill v. State,* 2000 ND 143, ¶ 16 n. 1, 615 N.W.2d 135; *State v. Christensen,* 1997 ND 57, ¶¶ 9, 11, 561 N.W.2d 631; *State v. Ash,* 526 N.W.2d 473, 481 (N.D.1995); *State v. Zimmerman,* 524 N.W.2d 111, 117 (N.D.1994); *State v. Smuda,* 419 N.W.2d 166, 167 (N.D.1988); *State v. Hatch,* 346 N.W.2d 268, 277–78 (N.D.1984); *State v. Hartsoch,* 329 N.W.2d 367, 371–72 (N.D. 1983); *State v. Klein,* 200 N.W.2d 288, 291–92 (N.D.1972). Section 29–22–05, N.D.C.C., unequivocally gives defendants a statutory right to have a jury brought into the courtroom and requires the court to have requested testimony read to the jury and to inform the jury on points of law. *Jahner,* at ¶¶ 6, 8; *Hartsoch,* at 371–72.

[¶ 27] In addition to a defendant's statutory right, N.D.R.Crim.P. 43 addresses requirements for a defendant's presence during a criminal trial, including the return of a verdict. The rule, however, does not require a defendant's attendance for hearings on questions of law and a defendant may waive the right to be present by voluntarily being absent or by disruptive conduct. N.D.R.Crim.P. 43. *See City of Mandan v. Baer,* 1998 ND 101, ¶ 9, 578 N.W.2d 559.

[¶ 28] The statute and rule give a criminal defendant a right to be present during the entire trial, and that right has a constitutional dimension. *Parisien,* 2005 ND 152, ¶¶ 7–8, 703 N.W.2d 306; *Baer,* 1998 ND 101, ¶¶ 9–10, 578 N.W.2d 559; *Ash,* 526 N.W.2d at 480–81; *Zimmerman,* 524 N.W.2d at 117; *Smuda,* 419 N.W.2d at 167–68; *State v. Schasker,* 60 N.D. 462, 464, 235 N.W. 345, 346 (1931). "Because of the constitutional underpinnings of the

defendant's right to be present" during all stages of a criminal trial, the State must establish a violation of the defendant's right to be present was "harmless beyond a reasonable doubt." *Parisien*, at ¶ 8; *Hill*, 2000 ND 143, ¶¶ 19–23, 615 N.W.2d 135; *Baer*, at ¶¶ 9–10; *Ash*, at 480–81; *Smuda*, at 167–68; *Hatch*, 346 N.W.2d at 278.

[¶ 29] In *Parisien*, 2005 ND 152, ¶¶ 1, 21–22, 703 N.W.2d 306, this Court concluded the totality of the circumstances demonstrated the defendant was denied his constitutional right to be present and the error was not harmless beyond a reasonable doubt. In that case, this Court reversed criminal convictions because of the cumulative effect of:

> "the jury's 17–hour workday, the lateness of the hour, the trial court's knowledge of the deadlocked jury's numerical division, the two responses to the jurors encouraging them to continue to try to reach a verdict, the failure of the court to follow proper procedure in addressing the jury's questions, and the lack of a record of the in-chamber conferences."

*Parisien*, at ¶ 21.

[¶ 30] In *Baer*, this Court reversed a criminal conviction "because the district court erred in excusing a prospective juror during jury selection in the absence of the accused and his counsel" and because the State failed to establish the violation was harmless beyond a reasonable doubt. 1998 ND 101, ¶¶ 1, 13, 578 N.W.2d 559. This Court explained:

> "To dismiss a violation of the presence requirement as harmless, it must be 'determined beyond a reasonable doubt that [the] substantial rights of the defendant are not affected....' *Hatch*, 346 N.W.2d at 278. In most cases, the substantial rights of the defendant are affected if the error is prejudicial. *United States v. Olano*, 507 U.S. 725, 734, 113

S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993), *opinion on remand*, 62 F.3d 1180 (9th Cir.1995). The error is prejudicial if it has 'affected the outcome of the district court proceedings.' *Id.*"

*Baer*, at ¶ 19. This Court declined to "speculate or rationalize as to the level of prejudice resulting from the composition of the jury" and said the State could not meet its burden of establishing the error was harmless beyond a reasonable doubt by "mere speculation." *Id.* at ¶ 20. This Court was not convinced beyond a reasonable doubt that the dismissal of a prospective juror outside the defendant's presence was not prejudicial to him. *Id.*

■ [¶ 31] The common thread in this Court's jurisprudence involving violations of a defendant's constitutional right to be present during a trial depends on the facts and circumstances of each case and focuses on whether the error affected the outcome of the proceeding. *See Ash*, 526 N.W.2d at 481 ("discern[ing] no possibility of prejudice to [defendant]"); *Zimmerman*, 524 N.W.2d at 117 (stating it would be unreasonable to conclude defendant's presence or absence had any effect on result and discerning no possibility of prejudice); *Smuda*, 419 N.W.2d at 168 (stating it would be unreasonable to conclude defendant's presence could have or would have affected proceedings or result); *Hatch*, 346 N.W.2d at 277–78 (stating trial court's response to jury request constituted refusal to answer and did not affect defendant's substantial rights).

[¶ 32] Here, Curtis's argument involves the last two requests by the jury while he was absent for a medical emergency. Although Curtis claims there were some off-the-record communications between the district court and the prosecuting attorney for those two requests, he has not taken steps to preserve or make a record about those communications under N.D.R.App.P.

10. *See Klose*, 2003 ND 39, ¶ 40, 657 N.W.2d 276. To the extent Curtis claims on-the-record communications by the court and the prosecuting attorney were improper ex parte communications, N.D.Code Jud. Conduct Canon 3(B)(7)(a) authorizes "ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters." *See Andrews v. O'Hearn*, 387 N.W.2d 716, 724–26 (N.D.1986) (permitting ex parte communication for administrative matters). For those two requests by the jury, the court did not respond or otherwise communicate with the jury. The court discussed those two requests with the prosecuting attorney and with O'Day present while Curtis was absent with a medical emergency. This record supports a conclusion that Curtis experienced a legitimate medical emergency during the jury deliberations. The record also reflects that through O'Day, Curtis demanded to be present at all proceedings. The record further reveals that the court proceeded cautiously in discussions with the prosecuting attorney about Curtis's absence, with standby counsel present at all times. Although ex parte communications between the court and the prosecutor may raise constitutional, statutory and ethical issues, under the circumstances of this case we reject Curtis's arguments about these ex parte communications between the court and the prosecuting attorney relating to Curtis's absence and how the case could proceed in his absence.

[¶ 33] To the extent Curtis also raises constitutional and statutory claims about his right to be present, we conclude Curtis had a statutory right to have the jury brought into the courtroom to hear the evidence requested by the jury. *See Jahner*, 2003 ND 36, ¶¶ 6, 8, 657 N.W.2d 266; *Hartsoch*, 329 N.W.2d at 371–72. Curtis also had a constitutional right to be present during discussions that went beyond scheduling and that dealt substantively with the last two jury requests. Because of the constitutional underpinnings of a defendant's right to be present during all stages of a criminal trial, the State must establish Curtis's absence was harmless beyond a reasonable doubt. *Parisien*, 2005 ND 152, ¶ 8, 703 N.W.2d 306.

[¶ 34] The circumstances of this case are significant to our inquiry about whether Curtis's absence during discussions about the last two jury requests was harmless beyond a reasonable doubt. At about 9:00 a.m., on December 6, at the jury's request and while Curtis was present, the entire video and audio recording from Officer Ahlfeldt's patrol car was played to the jury. The entire video and audio recording had been played to the jury once during the trial. At about 10:50 a.m. on December 6, the jury asked to have a specified time frame from the audio played twice. Then, at approximately 12:50 p.m. on the same day, the jury asked for a laptop to view the video recording in the jury room. These last two requests came to the court within four hours of the jury hearing and seeing the entire video and audio recording. Also within that time, the court learned Curtis had been taken by ambulance to the hospital. At 1:35 p.m., the court was told that Curtis would be returning to the courtroom "shortly" and the court decided to wait one half hour hoping that Curtis would return. At 2:30 p.m., the court was informed that the jury had reached a verdict and that Curtis would not be returning to court that day.

[¶ 35] Curtis represented himself during trial and did not waive his right to be present during proceedings about the last two jury requests. Although there were discussions about those jury requests between the court and the prosecuting attor-

ney, the record reflects there were no communications with the jury about the two requests during Curtis's absence. In final instructions to the jury, the district court had instructed the jury that "[i]f it becomes necessary for you to communicate with me during your deliberations, the Jury Leader should send a note to the bailiff(s). All questions to the Judge must be reviewed by the attorneys. This may take a period of time and some questions may not be answered."

[¶ 36] A thorough review of the record clearly establishes that the court made every effort to protect Curtis's rights in his absence and conscientiously avoided any possibility of prejudice to Curtis. The record reflects the court properly examined the requirements of the statute and the constitutional right to be present. We discern no possibility of prejudice to the outcome of this case, and we therefore conclude the discussion about the two jury requests while Curtis was hospitalized was harmless beyond a reasonable doubt.

## IV

[¶ 37] We affirm the judgment.

[¶ 38] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.